HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

JOHNNY B. DELASHAW, JR.,

                Plaintiff,

     v.

SEATTLE TIMES COMPANY, and CHARLES COBBS,

                Defendants.

Case No. 18-cv-00537-JLR

OPPOSITION TO MOTION TO COMPEL PROTECTED AND PRIVILEGED COMMUNICATIONS

## I. INTRODUCTION

The Seattle Times (Times) seeks to compel production of emails written for the purpose of obtaining, or containing or reflecting, legal advice and work product. These emails were among existing (David Sabey) and prospective (Drs. Delashaw and Oskouian) clients of the undersigned. They shared a common interest in securing the advice and assistance of counsel to (1) prepare for potential litigation arising from past and potential defamatory articles published by the Times; (2) assemble facts to deter further defamatory articles; and (3) analyze legal issues to guide these efforts. The undersigned worked with Drs. Delashaw and Oskouian's respective counsel in these efforts, and properly logged and withheld these communications as protected by the attorney-client privilege and work product doctrine.

The Court should deny the Times's motion to compel and enter a protective order.

OPP'N TO MOTION TO COMPEL - 1
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

## II.   FACTS

In February 2017, the Times published the first two articles containing false and defamatory statements attacking the quality of patient care at Swedish Neuroscience Institute (SNI) and accusing Dr. Delashaw and Dr. Oskouian along with other SNI surgeons of endangering patients by racing through surgeries to make more money.  The Times then targeted Dr. Oskouian in the follow-up article "Swedish Double-Booked Its Surgeries, and the Patients Didn't Know," published on May 28, 2017.[1]  Like the earlier claims about Dr. Delashaw, the Times falsely claimed that Dr. Oskouian had placed profits above patient care:

> Since her surgery, Phyllis Johnson's neck has been so askew that she can no longer look toward the sky.  After his surgery, Duane Pearson found his hands frequently stinging with pain.  Orna Berkowitz's surgery was supposed to be routine, but she ended up in the hospital for 41 days.
>
> The three patients had placed their trust in the same doctor, Rod Oskouian, a top neurosurgeon at Swedish Health. [¶] But there was something they didn't know: Oskouian's attention was split during each of their procedures, with internal data showing he was running two operating rooms at the same time.  [*Id.* p. 42]

The Times's false reporting was based largely on misinformation provided to Mike Baker by the conspirators working to oust Dr. Delashaw from his leadership role at SNI.  Emails show that Mr. Baker relied on, but never identified in his articles, former SNI co-chair Marc Mayberg as a primary source for the articles.[2]  Mr. Baker followed Dr. Mayberg's suggestion to make David Sabey, a longtime Swedish supporter and co-founder of the Seattle Science Foundation (SSF), a target of the investigation.  Accordingly, throughout 2016 and 2017 (including a personal call to Mr. Sabey in July 2017[3]), Mr. Baker pursued inquiries about aspects of Mr. Sabey's involvement with SNI and SSF in ways clearly designed to paint a false picture critical of Mr. Sabey, his

---

[1] Farmer Decl. Ex. 1 at 39-51 (Jan. 7).

[2] *See, e.g.,* Farmer Decl. Ex. 2 (representative email sent to Mr. Baker from Dr. Mayberg's wife's account). Mr. Baker proceeded with the articles even after he had been informed by knowledgeable people that his sources were acting from improper motives and were supplying false information.

[3] Sabey Decl. ¶ 8 (Jan. 7).

OPP'N TO MOTION TO COMPEL - 2
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

company, and SSF.[4]  Mr. Baker's focus on Mr. Sabey was not an afterthought.  In a memo written in August 2016, Mr. Baker described exactly the series that the Times published in 2017:

> **Memo on potential Swedish stories** [¶] *Story 1*: A look at Swedish-Cherry Hill's push toward high neurosurgery volumes.  This story would explore that troubled pasts of two of Swedish's star surgeons and how the hospitals top doctors have performed at unusually high volumes. . . . [¶] *Story 2*: Explaining why.  Swedish has unusual influence from *David Sabey*, a prominent and powerful local developer. . . . We would explore the unusual aspects of a "nonprofit" hospital *ramping up its profits for the benefit of a for profit developer*. . . . [including] Sabey's role in recruiting the new chief neurosurgeon, whose problems would be laid out in Story 1. [¶] *Story 3*: Because of high margins and revenues associated with neurosurgery, drug and device makers seek relationships with top doctors.  In Seattle, the relationship is facilitated by a separate nonprofit [i.e., SSF] . . . .  The foundation regularly hosts events and classes paid for by surgery device makers.  *The foundation is led by Sabey, the developer in Story 2*.[5]

The Times published *Story 1* as three articles in February and May 2017, and published *Story 2* and *Story 3* in December 2017, titled "Swedish's Ambitions Involve Developer with a Lot to Gain."[6]  The Times summed the series: "The four-part series . . . began with an in-depth look at the treatment of Talia Goldenberg . . . and ended with a story uncovering how the hospital's relationship with a real-estate developer complicated efforts to maintain control over medical programs."[7]

By summer 2017, Dr. Delashaw and Dr. Oskouian knew that the Times had published false information about them,[8] and Mr. Sabey was rightly concerned that the Times planned to publish

---

[4] Farmer Decl. Ex. 3 (sample of representative emails); Sabey Decl. ¶ 8.

[5] Farmer Decl. Ex. 4 at 1 (emphasis added).

[6] Farmer Decl. Ex. 1, articles begin at pp. 4, 20, 39, and 52.

[7] Farmer Ex. 5 (article dated Feb. 13, 2018); *see also* Appendix hereto (current webpage about series).

[8] By then, and largely as a result of the Times's defamatory articles (as the Times itself touts, *see* Farmer Decl. Ex. 1 at 1), the Washington Medical Quality Assurance Commission (MQAC) and the United States Department of Justice (DOJ) notified Dr. Delashaw and Dr. Oskouian that each had launched investigations of them, and MQAC summarily suspended Dr. Delashaw's medical license for reasons that included the issues raised in the Times's articles.

  Dr. Oskouian was represented by attorney John Layman and by attorneys Robert Mahler, James Fredman, and Adrienne McKelvey of Polsinelli in the DOJ and MQAC investigations.  Layman Decl. ¶ 5.  Dr.

OPP'N TO MOTION TO COMPEL - 3
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

an article that would contain false statements about him. At that point, the common interest group began working together with the help and guidance of the undersigned, who has a decades-long relationship with Mr. Sabey in connection with a variety of legal matters,[9] and their other counsel to analyze and develop potential legal claims against the Times and to develop strategies to prevent future misleading coverage.[10] It was mutually agreed that the parties were working together toward these goals; that the need to share legal resources, coordinate strategy, and share information gave rise to a mutual expectation of confidentiality; and that their related communications were privileged and confidential.[11] This understanding governed their actions from the beginning of the effort and was reduced to writing in November 2017.[12]

Each participant was seeking legal advice at all relevant times. For Drs. Oskouian and Delashaw, this advice included (1) exploring a claim against the Times, (2) seeking to prevent further false and potentially damaging articles about them, and (3) coordinating with their attorneys, including (in the case of Dr. Delashaw) his counsel in the MQAC proceedings.[13] Mr. Sabey sought the assistance of counsel in (1) assembling and unequivocally communicating facts relating to Mr. Baker's inquiries in order to deter defamatory statements, (2) making clear that distortions and untruths would lead to legal action, and (3) obtaining legal advice on potential

---

Delashaw was represented by attorney Amy Magnano of Bennett Bigelow in the MQAC proceedings and by attorney Harold Malkin of Lane Powell with respect to the DOJ investigations. Delashaw Decl. ¶ 7. Communications by members of the common interest group and some of these counsel are the subject of the Times's instant motion. Although the motion does not implicate any communications involving the attorneys involved in the DOJ investigation, the requested protective order would encompass them. All of the communications are protected from disclosure by the attorney client privilege and work product doctrine, as extended by the common interest agreement.

[9] *See, e.g., Sabey v. Howard Johnson & Co.*, 5 P.3d 730 (Wash. Ct. App. 2000).

[10] Delashaw Decl. ¶ 5 (Jan. 7); Sabey Decl. ¶ 11; Layman Decl. ¶¶ 5-6; Farmer Decl. ¶ 4.

[11] Delashaw Decl. ¶ 5; Sabey Decl. ¶ 11; Layman Decl. ¶ 5; Farmer Decl. ¶ 4.

[12] Delashaw Decl. ¶ 6; Sabey Decl. ¶ 11; Layman Decl. ¶ 5; Farmer Decl. ¶ 5; Dkt. 60-1 (agreement).

[13] Delashaw Decl. ¶¶ 3, 5; Layman Decl. ¶¶ 5-6; Farmer Decl. ¶ 4.

OPP'N TO MOTION TO COMPEL - 4
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

causes of action should deterrence fail.[14]  This lawsuit followed in April 2018 but was not the only product of the collaboration, which included also (1) refuting and developing potential claims based on the falsehoods already published and (2) assembling facts and legal arguments in the face of which the Times would potentially be deterred from replicating its defamatory attacks.

### III.    ARGUMENT

"Because federal jurisdiction in this case is based on diversity, Washington law applies to claims of attorney client privilege, while federal law governs assertions of work product protection." *Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 666 (W.D. Wash. 2007); *see also MKB Constructors v. Am. Zurich Ins. Co.*, C13-0611 JLR, 2014 WL 2526901, at *8 (W.D. Wash. May 27, 2014) (same).  Because the emails are privileged and protected, the Court should deny the motion to compel and enter a protective order.  *Cf.* Fed. R. Civ. P. 26(c) (court may compel production if motion for protective order is denied).

**A.    The Communications Are Privileged because in Them Dr. Delashaw, Dr. Oskouian, and Mr. Sabey Sought, Received, and Discussed Legal Advice.**

The activities just described more than meet the requirements for applying the common interest doctrine, which "provides that when multiple parties share confidential communications pertaining to their common claim or defense, the communications remain privileged as to those outside their group." *Sanders v. State*, 240 P.3d 120, 134 (Wash. 2010).

Although in the early months only Mr. Sabey had formally retained the undersigned, each of Dr. Delashaw and Dr. Oskouian intended to retain the undersigned if he decided to sue, with likely collaboration with other counsel already representing each.[15]  *Contra* Dkt. 56/60 pp. 9-10, 14[16] ("third" argument).  Under Washington law, communications with a prospective client are privileged.  *See, e.g., Dietz v. Doe*, 935 P.2d 611, 616 (Wash. 1997) (remanding to develop

---

[14] Sabey Decl. ¶¶ 9, 12 & Ex. 1.

[15] Delashaw Decl. ¶ 4; Layman Decl. ¶ 6; Farmer Decl. ¶ 4.

[16] Throughout this brief, the page(s) cited for previously-filed documents are to the ECF pagination.

OPP'N TO MOTION TO COMPEL - 5
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

1  whether there was a "factual basis to establish an attorney-client relationship or other protected

2  relationship, such as prospective client"); *Broyles v. Thurston County*, 195 P.3d 985, 1002 (Wash.

3  Ct. App. 2008) ("no error" in trial court's conclusion that "the consequence of going to see

4  attorneys in a confidential situation and asking them questions" is that an "attorney/client

5  relationship existed, even though they weren't paid a dollar").

6       Drs. Oskouian and Delashaw communicated with the lawyers they had already retained and

7  with Mr. Sabey's undersigned firm with the shared goal of helping counsel to gather information

8  and analyze legal issues related to two efforts: (1) a potential lawsuit and (2) presentation of the

9  facts to the Times (with the threat of litigation should the Times publish additional falsehoods) to

10 deter future defamatory statements.[17]  A primary purpose of these communications was to

11 determine whether an action against the Times would be filed and if so by whom.  This work could

12 not occur without privileged communications among the prospective clients and counselors.

13      It does not matter that ultimately—so far—only Dr. Delashaw has sued the Times.  *See,*

14 *e.g., Broyles*, 195 P.3d at 1002 (holding that pre-engagement communication between four

15 prosecutors and a private employment lawyer with whom they met was privileged "regardless of

16 whether [one of the prosecutors] thought she was a client or was willing to waive the privilege");

17 *cf.* RPC 1.18(b) ("Even when *no client-lawyer relationship ensues*, a lawyer who has learned

18 information from a *prospective client shall not use or reveal that information*, except [in inapposite

19 situations]." (emphasis added)).  As a leading treatise explains, "[c]ommunications in the course of

20 preliminary discussion with a view to employing the lawyer are privileged though the employment

21 is in the upshot not accepted."  1 *McCormick on Evidence* § 88 (7th ed.).  (The Times's argument

22 adumbrates a later motion to compel all communications between the undersigned and Dr.

23 Delashaw that predated formal engagement, a motion which would be directly contrary to

24 Washington law.  *See* Dkt. 56/60 p. 7 ("[T]he 12 emails Dr. Delashaw authored *are not privileged*.

25

---

[17] Delashaw Decl. ¶¶ 3, 5; Sabey Decl. ¶¶ 10-13; Layman Decl. ¶¶ 5-6; Farmer Decl. ¶ 4.

OPP'N TO MOTION TO COMPEL - 6
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

There is *no indication he was an HLFT client* at the time." (emphasis added) (citation omitted)).

The Times argues that the three men sought *business* rather than legal advice but presents no facts to support this claim. The parties were seeking advice from *trial lawyers*. The focus of the effort was potential litigation against the Times and educating the Times about the serious risks it faced in case of a repetition. The ostensible basis for the claim that business advice only was sought is 18 words in an 88-word purpose statement of the common interest agreement. Dkt. 56/60 p. 13 ("first" argument). The other 70 words include the potential lawsuit relating to the Times's articles.[18]

The Times also cites an email Mr. Sabey sent to persons *other* than his lawyers about means *other* than a lawsuit or threat of a lawsuit to address the Times's actions. Dkt. 56/60 p. 13. The issue is not whether Mr. Sabey considered actions in addition to litigation; the issue is whether the purpose of the collaboration giving rise to the communications was to obtain legal advice, including options such as litigation. It is absurd to suggest that communications lose their protected status because a party also explored other ways to accomplish his goals. The common interest and need for a potential *legal* solution to the Times's defamation campaign led to the communications Dr. Delashaw seeks to protect from disclosure. The common interest document simply put in writing what was already agreed and was plain to the potential litigants.[19]

It makes no difference that the participants did not reduce their agreement to writing simultaneously with beginning to work pursuant to it: "a written agreement regarding the privilege is not required" for there to be a valid common interest agreement protecting privileged communications and work product. *Kittitas County v. Allphin*, 381 P.3d 1202, 1209 (Wash. Ct. App. 2016), *aff'd* 416 P.3d 1232 (Wash. 2018) (accepting review only of work product issue and affirming); *see also United States v. Gonzalez,* 669 F.3d 974, 979 (9th Cir. 2012) ("[I]t is clear that

---

[18] Dkt. 60-1.

[19] Delashaw Decl. ¶ 6; Sabey Decl. ¶ 11; Layman Decl. ¶¶ 5-6; Farmer Decl. ¶ 5.

OPP'N TO MOTION TO COMPEL - 7
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

1  no written agreement is required, and that a [joint defense agreement] may be implied from
2  conduct and situation.").  Accordingly, their "confidential communications pertaining to their
3  common claim or defense . . . remain privileged as to those outside their group." *Sanders*, 240
4  P.3d at 134.

5        The Times's attempt to distance the article about Dr. Delashaw from the article about Mr.
6  Sabey (Dkt. 56/60 pp. 13-14, "second" argument) suggests, *at best*, a surprising unfamiliarity with
7  the facts of the Times's series.  To this day, the articles are advertised as a series entitled "Quantity
8  of Care" with the article about Mr. Sabey garnering top billing, followed closely by the three
9  articles about Dr. Delashaw and Dr. Oskouian.[20]  Had Mr. Sabey or Dr. Oskouian chosen to sue,
10 they would have done so as co-plaintiffs with Dr. Delashaw, based on the Times's own claims that
11 the articles about them were part of a connected narrative.[21]

12       The scope of the attorney-client privilege includes communications with consulting expert
13 Robert Gust.[22]  Even if the Times chooses to call him as a fact witness regarding Dr. Delashaw's
14 recruitment to SNI (*see* Dkt. 56/60 p. 10), his later communications with Dr. Delashaw and Dr.
15 Delashaw's lawyers as Dr. Delashaw's consulting expert remain privileged.  *Richards v.*
16 *Healthcare Res. Group, Inc.*, No. C15-134, 2016 WL 7494294, at *3 (E.D. Wash. Aug. 3, 2016)
17 (where a fact witness is also a consulting expert "the discovery exemptions" of Rule 26(b)(4)(D)
18 protect "those materials produced by the expert in his or her role as a consulting expert").[23]

19       Some of the correspondence was with attorneys other than the undersigned who were
20 representing Dr. Delashaw and Dr. Oskouian in other proceedings, including the DOJ
21 investigations triggered by the Times's articles and the MQAC proceedings against Drs. Delashaw

---

[20] https://www.seattletimes.com/tag/quantity-of-care/ (reproduced at Appendix hereto).

[21] *See supra* note 6 and accompanying text.

[22] *See* Farmer Decl. ¶ 6.

[23] *See also Synopsys, Inc. v. Ricoh Co.*, No. C03-2289, 2006 WL 2458721, at *1-2 (N.D. Cal. 2006); *Sensormatic Elecs. Corp. v. WG Sec. Prods., Inc.*, No. 04-167, 2006 WL 1305166, at *2 (E.D. Tex. 2006).

OPP'N TO MOTION TO COMPEL - 8
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

and Oskouian, which also directly, and improperly, were predicated on the Times's falsehoods. These proceedings had an obvious and substantial factual and legal overlap with the claims in this lawsuit and with the rest of the work of the common interest group and are privileged. The common interest was served by these communications.[24]

**B.     The Communications Are Protected by the Work Product Doctrine because They Were Prepared in Anticipation of a Lawsuit.**

The work product doctrine applies to the communications at issue because they were prepared in anticipation of actions against the Times and potentially against others. Discovery is limited by Rule 26(b)(3)(A): "Ordinarily,[25] a party may not discover documents and tangible things that are *prepared in anticipation of litigation* or for trial *by* or for *another party* or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id.* (emphasis added). I.e., "to qualify for protection . . . documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'" *In re Grand Jury Subp.*, 357 F.3d 900, 907 (9th Cir. 2004) (quoting rule).

**1.     The documents were created or obtained "in anticipation of litigation."**

Sometimes documents are created for business as well as litigation purposes, such as tax documents. In those cases, the document served a "dual purpose," and the court must determine whether it would have been created absent the potential dispute. *See, e.g., United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) ("In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the

---

[24] The Times itself touts that its articles were the cause of the MQAC proceeding against Dr. Delashaw: "The series has had a swift and sweeping impact. . . . Within three weeks, a top neurosurgeon resigned, and the state later suspended his medical license." Farmer Decl. Ex. 1 at 1 (Times's prize submission).

[25] The Times does not argue that the exception to Rule 26(b)(3) applies, that the protected emails "are otherwise discoverable" and "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i), (ii).

OPP'N TO MOTION TO COMPEL - 9
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

prospect of litigation.'" (citation omitted)). In *United States v. Microsoft Corporation*, C15-102RSM, 2017 WL 1788411 (W.D. Wash. May 5, 2017), for example, it was unclear to the court whether documents between Microsoft and its accountants had been prepared anticipating litigation with the government or would have been created absent that potential dispute. The court reviewed those documents *in camera* to determine if the work product doctrine applied. *Id.* at *5.

There is no second purpose to these communications which contain, seek, or reflect legal advice from *trial lawyers*. Of course, people whose livelihoods are at stake have a business interest in avoiding being defamed by the Times, in suing the Times to recover for damage afterward, and in maintaining their licenses to practice their profession. Dr. Delashaw, Dr. Oskouian and Mr. Sabey worked with *trial lawyers* in order to prepare to take *legal recourse* against the Times, to marshal evidence to deter further defamatory articles,[26] to credibly alert the Times of its peril if it published false statements knowing of the facts,[27] and to prepare to file suit.

**2.    The documents were prepared by or for Dr. Delashaw.**

The Times cites to *In re California Public Utilities Commission*, 892 F.2d 778 (9th Cir. 1989), quotes the "prepared by or for another party" rule, and argues emails by non-parties to this lawsuit are not protected. Motion at 9. The Times is wrong. First, in that case a non-party was resisting a document subpoena. Here Dr. Delashaw (a party) seeks protection of documents created by *and for* all participants in the common interest agreement. The documents are work product within the scope of Rule 26(b)(3). In addition, while all work product is protected from disclosure, many of these emails reflect the lawyers' mental impressions, conclusions, opinions, and legal theories—"the core types of work product protected under" *Hickman v. Taylor*, 329 U.S. 495 (1947); such material "is virtually undiscoverable." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014).

---

[26] Sabey Decl. Ex. 1.

[27] Sabey Decl. ¶ 13.

OPP'N TO MOTION TO COMPEL - 10
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

Moreover, under Rule 26(b)(3), there is no distinction between attorney and non-attorney work product. *See, e.g., Republic of Ecuador v. Mackay*, 742 F.3d 860, 869-70 nn. 3, 4 (9th Cir. 2014). When this rule was adopted, the advisory committee stated that it "reflects the view that *each side's informal evaluation* of its case *should be protected*, that *each side* should be encouraged to prepare independently." Fed. R. Civ. P. 26 adv. comm. note to 1970 amend. (emphasis added). Although the adverse party may "to some extent" gain access to "mental impressions, opinions, or conclusions" of a party, it must do so by interrogatory and request for admission because "[d]ocuments or parts of documents containing these matters are protected against discovery." *Id.* In sum, a party "is entitled to keep confidential documents containing such matters prepared for internal use." *Id.* The "primary purpose of the work product rule is to 'prevent exploitation of a party's efforts in preparing for litigation.' Like the discovery process that it limits, the work product doctrine encourages efficient development of facts and issues." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (citation omitted).

As noted, one purpose of the work was to coordinate with counsel handling the regulatory proceedings against Drs. Delashaw and Oskouian which MQAC initiated as a direct result of the Times articles. Some of the communications included attorneys defending Dr. Delashaw in that proceeding, but, as noted in the log, these communications related to the potential claims against the Times as well as to defenses in the MQAC proceedings. They, too, are work product. As the Times itself has bragged (*see* note 24, *supra*), the MQAC proceeding arose directly from the Times's articles—*i.e.*, falsehoods. Moreover, "[v]oluntary disclosure of work-product to a third party does not waive the work-product protection unless such disclosure enables an adversary to gain access to the information. While the Ninth Circuit has not weighed in on this issue, other courts have, and they agree that waiver requires more than mere disclosure to a third party." *W. Challenger, LLC v. DNV GL Group*, C16-0915-JCC, 2017 WL 5009977, at *2 (W.D. Wash. Nov. 2, 2017) (citing 8 *Federal Practice and Procedure* § 2024). These communications were made in

OPP'N TO MOTION TO COMPEL - 11
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

anticipation of litigation, were shared only with people with aligned interests, and are protected.

**C.     Dr. Delashaw Preserved His Claims of Protection and Privilege.**

The Times is wrong that "Dr. Delashaw's privilege log fail[s] to provide information sufficient to conclude the emails should be protected."  Motion at 6.  Dr. Delashaw did more than is required in the Ninth Circuit, which requires only that the log identify "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated."  *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (citing *Dole v. Milonas*, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989).  In additions to those elements, Dr. Delashaw identified the subject matter of each document, i.e., he "went beyond the *Dole* standards."  *Id.*

Judge Martinez recently held that Microsoft had sufficiently disclosed the subject matter of each document by identifying as the subject matter of each some derivation of "regarding legal advice on cost-sharing and Puerto Rico operations," i.e., the tax issue in dispute.  *United States v. Microsoft Corporation*, No. C15-102RSM, 2017 WL 1788411, *5, 6 (W.D. Wash. May 5, 2017) (log is at No. 15-102, Dkt. 141).  The declaration submitted by Microsoft was equally conclusory.  No. 15-102, Dkt. 141 pp. 3, 4 (Sept. 12, 2016).  Judge Martinez reviewed a few of the documents in camera not to substantiate these claims, but instead to determine (1) for those privileged documents involving in-house lawyers, whether they were giving business or legal advice; and (2) for those work product documents created by tax professionals, whether they were created in anticipation of litigation or instead for business purposes.  2017 WL 1788411, *5, 6.

The Times argues that Dr. Delashaw's identification of the subject matter was insufficient, but Dr. Delashaw cannot be more specific without disclosing the content of the communication.  Each of the documents withheld as work product were prepared by or for Dr. Delashaw, Dr.

OPP'N TO MOTION TO COMPEL - 12
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

Oskouian, or Mr. Sabey in anticipation of litigation.[28] Each of the documents withheld as an attorney-client communication either is or reflects requests for legal advice or the communication of legal advice.[29] That is all that is required.

## IV.   CONCLUSION

Dr. Delashaw, Dr. Oskouian, and Mr. Sabey sought legal advice about the same fundamental issues: legal recourse for the defamatory statements made and in the process of being made about them by the Times and legal advice and assistance in deterring the Times from publishing further false articles.  They communicated with the undersigned and other lawyers about the potential litigation, and they legitimately expected, and intended, that those communications were privileged and confidential.  The Court should deny the Times's motion and enter a protective order.

DATED this 7th day of January, 2019.

HARRIGAN LEYH FARMER & THOMSEN LLP

By: *s/ Arthur W. Harrigan, Jr.*
By: *s/ Tyler L. Farmer*
By: *s/ Kristin E. Ballinger*
  Arthur W. Harrigan, Jr., WSBA #1751
  Tyler L. Farmer, WSBA #39912
  Kristin E. Ballinger, WSBA #28253
  999 Third Avenue, Suite 4400
  Seattle, WA 98104
  Tel:   (206) 623-1700
  Fax:   (206) 623-8717
  Email: arthurh@harriganleyh.com
  Email: tylerf@harriganleyh.com
  Email: kristinb@harriganleyh.com

LAW OFFICES OF IRWIN H. SCHWARTZ

By: *s/ Irwin H. Schwartz*
  Irwin H. Schwartz, WSBA #4769
  999 Third Avenue, Suite 4400

---

[28] Farmer Decl. ¶ 10.

[29] Farmer Decl. ¶ 9.

OPP'N TO MOTION TO COMPEL - 13
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

1
2
Seattle, WA 98104
Tel: (206) 623-5084
Email: irwin@ihschwartz.com

3
*Attorneys for Johnny B. Delashaw, Jr.*

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

OPP'N TO MOTION TO COMPEL - 14
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

APPENDIX







*Swedish Health's Ambitious Seattle Plans* (Dec. 2017)

*A Lost Voice* (Feb. 2017) (*e.g.*, Dr. Delashaw "told her parents it had been 'perfect.' . . . But as the anesthesia faded in Talia's system, she realized that not everything was not perfect . . . .")

*The O.R. Factory* (Feb. 2017) (*e.g.*, "the hospital's administrators moved ahead with a plan to revamp surgical contracts in a way that would incentivize the high-volume approach in which Delashaw excelled")

*Swedish Surgeons Were Double-Booked* (May 2017) (*e.g.*, "[b]ut there was something they didn't know: Oskouian's attention was split during each of their procedures")

https://www.seattletimes.com/tag/quantity-of-care/

OPP'N TO MOTION TO COMPEL - 15
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties registered with the Court's ECF system for the above-captioned case.

DATED this 7th day of January, 2019.

        HARRIGAN LEYH FARMER & THOMSEN LLP

        By: _s/ Arthur W. Harrigan, Jr._
           Arthur W. Harrigan, Jr., WSBA #1751
           999 Third Avenue, Suite 4400
           Seattle, WA  98104
           Tel:   (206) 623-1700
           Fax:   (206) 623-8717
           Email:  arthurh@harriganleyh.com

        *Attorneys for Johnny B. Delashaw, Jr.*

OPP'N TO MOTION TO COMPEL - 16
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717