1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Hon. James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHNNY B. DELASHAW, JR.,

                      Plaintiff,

     v.

SEATTLE TIMES COMPANY and
CHARLES COBBS,

                     Defendants.

No. 18-cv-00537-JLR

DEFENDANT CHARLES COBBS'
SECOND MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
July 31, 2020

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR)

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.............................2

        A.      Dr. Delashaw Caused Considerable Turmoil at SNI ...................2

        B.      Dr. Cobbs Sent the Armada Letter to Address Matters of Public
                Concern .......................................................................................3

        C.      MQAC's Investigation and Decisions Confirm that the Types of
                Complaints Raised in the Armada Letter Addressed Matters of
                Public Concern.............................................................................4

        D.      Dr. Cobbs Discussed Dr. Delashaw's Misconduct with Select Third
                Parties..........................................................................................5

        E.      The Court Concluded that Dr. Delashaw Presented Evidence
                Sufficient to Allege Dr. Cobbs Acted with Malice with Respect to
                Only Two Statements...................................................................6

        F.      Dr. Mayberg Communicated with the Times without Dr. Cobbs'
                Knowledge ...................................................................................6

        G.      Dr. Cobbs Had No Knowledge of or Involvement in Anonymous
                Emails ..........................................................................................7

III.    STATEMENT OF ISSUES ..................................................................7

IV.     EVIDENCE RELIED UPON ...............................................................8

V.      AUTHORITY AND ARGUMENT ......................................................8

        A.      Summary Judgment Standard ......................................................8

        B.      The Court Should Dismiss Dr. Delashaw's Defamation Claim. ....9

                1.      Dr. Delashaw must address what the Armada Letter actually
                        says.....................................................................................9

                2.      The Armada Letter was substantially true. .....................10

                        a.      The Court, not the jury, determines the "sting." ...............10

                        b.      The "sting" of the Armada Letter were the numerous
                                serious concerns about Dr. Delashaw's disruptive
                                behavior..........................................................................10

                        c.      Dr. Delashaw has not challenged the truth of the
                                "sting." ............................................................................11

                3.      Dr. Delashaw cannot establish by clear and convincing
                        evidence that the remaining statements were false and/or
                        harmed his reputation.......................................................12

                        a.      Dr. Delashaw cannot establish by clear and
                                convincing evidence that his "leadership and
                                management style" was not a "common thread"
                                linking the loss of many team members. ..........................13

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page i

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

           b.     Dr. Delashaw cannot prove by clear and convincing evidence that Dr. Cobbs caused reputational damage. .......14

           c.     Dr. Delashaw cannot prove by clear and convincing evidence that Dr. Cobbs caused lost income. ....................15

      4.     The HCQIA provides immunity for Dr. Cobbs' statements. .........16

           a.     The HQCIA protects individuals who provide information to a professional review body "regarding the … professional conduct of a physician" absent a showing of knowing falsity................16

           b.     Swedish and the MEC are "professional review bod[ies]."................................................................17

           c.     The HQCIA immunizes Dr. Cobbs, even where the intra-corporate privilege might not. ...................17

           d.     Dr. Delashaw cannot prove knowing falsity......................18

      5.     Dr. Delashaw must but cannot prove actual malice......................19

           a.     Whether Dr. Delashaw is a public figure and whether the Armada Letter addressed public concerns are questions of law. ...........................19

           b.     Dr. Delashaw is a public figure.........................................20

           c.     Dr. Cobbs' statements addressed matters of public concern. .......................................................................21

           d.     The Court already concluded Dr. Delashaw cannot prove Dr. Cobbs acted with actual malice in making certain statements........................22

  C.     The Court Should Dismiss Dr. Delashaw's Civil Conspiracy and Tortious Interference Claims ........................................................22

      1.     Dr. Delashaw's conspiracy and tortious interference claims are impermissibly based on "mere suspicion." ...............................23

      2.     Dr. Cobbs' efforts to remove Dr. Delashaw from a leadership role are not inconsistent with a lawful or honest purpose. ...........................................................................23

      3.     The Court concluded that the only potentially false information contained in the Times' Articles related to financial incentives. .......................................................24

VI.    CONCLUSION..................................................................................24

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Alpine Indus. Computers, Inc. v. Cowles Pub. Co.*,
  114 Wn. App. 371, 57 P.3d 1178 (2002),
4
  *amended*, 64 P.3d 49 (Wash. Ct. App. 2003) ...............................................21

5

*AR Pillow Inc. v. Maxwell Payton, LLC*,
  C11-1962RAJ, 2012 WL 6024765 (W.D. Wash. Dec. 4, 2012) ....................12

6

*Castello v. City of Seattle*,
  C10-1457MJP, 2010 WL 4857022 (W.D. Wash. Nov. 22, 2010).................8, 12

7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................................8
8

*Cline v. Indus. Maint. Eng'g. & Contracting Co.*,
9
  200 F.3d 1223 (9th Cir. 2000) .....................................................................8

*Corbit v. J. I. Case Co.*,
10
  70 Wn.2d 522, 424 P.2d 290 (1967)............................................................24

11

*Daniel Goldreyer, Ltd. v. Dow Jones & Co., Inc.*,
  259 A.D.2d 353, 687 N.Y.S.2d 64 (N.Y.A.D.1999)......................................20
12

*Exner v. Am. Med. Ass'n*
13
  12 Wn. App. 215, 224, 529 P.2d 863 (1974)..........................................20, 21

*Gertz v. Robert Welch, Inc.*,
14
  418 U.S. 323, 94 S.Ct. 2997 (1974) .............................................................20

15

*Herron v. KING Broad. Co.*,
  746 P.2d 295 (1987) ....................................................................................18

16

*Holman v. Coie*,
  11 Wn. App. 195, 522 P.2d 515 (1974) .......................................................23

17

*Johnson v. Ryan*,
  186 Wn. App. 562, 346 P.3d 789 (2015) ......................................................19
18

*Johnston v. Hidden Cove Prop. Owners Ass'n LLC*,
19
  195 Wn. App. 1008 (2016) ...........................................................................23

*Kunajukr v. Lawrence & Mem'l Hosp., Inc.*,
20
  3:05-CV-1813J, 2009 WL 651984 (D. Conn. Jan. 12, 2009)....................16, 17

21

*Manzari v. Associated Newspapers Ltd.*,
  30 F.3d 881 (9th Cir. 2016) .........................................................................20

22

*Moe v. Wise*,
  989 P.2d 1148 (1999)....................................................................................6
23

*Mohr v. Grant*,
24
  153 Wn.2d 812, 108 P.3d 768 (2005)................................................10, 11, 12

25

*Naini v. King Cty. Hosp. Dist. No. 2*,
  C19-0886-JCC, 2019 WL 5294783 (W.D. Wash. Oct. 18, 2019)..................16

26

*Paterson v. Little, Brown & Co.*,
  502 F. Supp. 2d 1124 (W.D. Wash. 2007)....................................................20

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Prudential Ins. Co. v. Black*,
   211 F.3d 1274 (9th Cir. 2000) .................................................................8, 18

*Schmalenberg v. Tacoma News, Inc.*,
   87 Wn. App. 579, 943 P.2d 350 (1997) ...........................................1, 12, 15

*Seaside Inland Transp. v. Coastal Carriers LLC*,
   2:17-CV-00143-SMJ, 2019 WL 4918747 (E.D. Wash. Oct. 4, 2019) ...........24

*Snyder v. Phelps*,
   562 U.S. 443, 131 S. Ct. 1207 (2011).........................................................22

*Tilton v. Cowles Pub. Co.*,
   76 Wn.2d 707, 459 P.2d 8 (1969)...............................................................20

*U.S. ex rel. Klein v. Omeros Corp.*,
   897 F. Supp. 2d 1058 (W.D. Wash. 2012)...................................................19

*Valdez-Zontek v. Eastmont Sch. Dist.*,
   154 Wn. App. 147, 225 P.3d 339 (2010)..........................................19, 20, 21

*Waldbaum v. Fairchild Publications, Inc.*,
   627 F.2d 1287 (D.C.Cir.1980)....................................................................20

*Woody v. Stapp*,
   146 Wn. App. 16, 189 P.3d 807 (2008) ......................................................23

**Statutes**

42 U.S.C. § 11111 ....................................................................................16, 17, 18

42 U.S.C. § 11151 .............................................................................................17

RCW 7.71.020 ...................................................................................................16

**Rules**

Fed. R. Civ. P. 10(c) ...........................................................................................2

Fed. R. Civ. P. 56(a) ...........................................................................................8

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page iv

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

# I. INTRODUCTION

On November 4, 2016, Defendant Dr. Charles Cobbs sent a letter ("Armada Letter") to Anthony Armada, the CEO of Swedish Health Services ("Swedish"), identifying serious concerns numerous physicians, employees, and staff had raised about the professional conduct of Plaintiff Dr. Johnny Delashaw, who was then the Chair of the Swedish Neurosciences Institute ("SNI"). The letter addressed a matter of serious public concern: Dr. Delashaw's unprofessional conduct was creating an increased risk to patient safety at SNI and contributing to the loss of experienced personnel. Washington's Medical Quality Assurance Commission ("MQAC") confirmed that the matters addressed in the Armada Letter were of public concern when it conducted an investigation into allegations of Dr. Delashaw's abusive treatment of nurses and concluded that Dr. Delashaw was a disruptive physician whose conduct contributed to staff departures and jeopardized patient safety.

But as Dr. Delashaw concedes "*this lawsuit is not about those complaints*." Dkt. 140 at 6 (emphasis original). Dr. Delashaw cannot take issue with the avalanche of criticisms launched against him. Indeed, rather than alleging that the core of the Armada Letter was false and defamatory, Dr. Delashaw attacks minor word choices that ultimately do not change the overall purpose, meaning, or impact of the letter. Given that the core statements at the heart of the letter are not at issue in this case, "no reasonable person could find that falsity of th[e] minor sort" complained about by Dr. Delashaw was a "factual cause of damage that would not have occurred anyway, due to the gist of the [letter] being true." *Schmalenberg v. Tacoma News, Inc.*, 87 Wn. App. 579, 602–04, 943 P.2d 350, 363–64 (1997). Because the "gist" of the Armada Letter was true, the two remaining categories of allegedly defamatory statements at issue here cannot form the basis of a defamation claim.

There are numerous other problems with Dr. Delashaw's claims, but they all boil

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 1

down to this: Dr. Delashaw must prove each element of his claims by clear and convincing evidence.  When put to that test, Dr. Delashaw will be unable to meet his high burden to sue based on Dr. Cobbs' speech.  The goal of the summary judgment process is to dispose of non-meritorious claims without the need of an expensive and time consuming trial.  Dr. Delashaw's claims against Dr. Cobbs are exactly that.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

Dr. Cobbs provided a detailed factual account in his First Motion for Summary Judgment ("1st Cobbs MSJ"), Dkt. 116, many of which were incorporated in the Court's Order on Defendants' Motions for Summary Judgment ("MSJ Order"), Dkt. 160. Dr. Cobbs incorporates by reference the factual statements set forth in the 1st Cobbs MSJ and MSJ Order as though fully set forth herein.  *See* Fed. R. Civ. P. 10(c).  Pertinent portions of those factual statements, as well as additional facts, are included here.

### A.    Dr. Delashaw Caused Considerable Turmoil at SNI

"Dr. Delashaw's arrival at Swedish Cherry Hill, promotion to Chairman of Neurosurgery and Spine at SNI, and management tactics at SNI caused a considerable amount of turmoil at SNI."  Dkt. 160 at 2.  "By January 2015, roughly 16 months after SNI hired Dr. Delashaw, SNI had received 32 Quality Variance Reports ('QVR') and 17 behavior reports about Dr. Delashaw—a number that Swedish's 30(b)(6) deponent testified seemed 'high.'"  *Id.* at 3 (quoting Dkt. 117 (Declaration of Jehiel I. Baer), Ex. 1 at 124:25-125:8.).  "In January 2016, an anonymous whistleblower filed a complaint with DOH noting that there had been numerous internal complaints filed within Swedish about 'quality issues related to the neurosurgical service' at Swedish's Cherry Hill campus, where Dr. Delashaw worked."  Dkt. 160 at 5 (quoting Dkt. 117, Ex. 12 at JDEL_026824-26).  "In addition to the whistleblower complaints, several more individuals filed internal complaints against Dr. Delashaw in 2016."  Dkt. 160 at 6; *see also* Declaration of

---

[1] **Exhibits A–R** referenced herein are attached to the Declaration of Malaika Eaton filed herewith.

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 2

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    Dr. Ryder Gwinn ("Gwinn Decl.") ¶¶ 4–5, 10.

2    **B.      Dr. Cobbs Sent the Armada Letter to Address Matters of Public Concern**

3            On November 4, 2016, Dr. Cobbs sent the Armada Letter "outlin[ing] concerns

4    that Dr. Cobbs claimed were raised by physicians, nurses, and staff about Dr. Delashaw

5    that fell into the following categories: (i) a pattern of intimidation, harassment, and

6    retaliation; (ii) discouraging the reporting of errors; (iii) discouraging staff from asking

7    questions; (iv) contributing to the loss of experienced personnel; (v) jeopardizing patient

8    safety with disruptive behavior; and (vi) interfering with other physicians' referrals and

9    practices." Dkt. 160 at 6.[2]  "Although Dr. Cobbs was the only signatory to the Armada

10   Letter, he received input from multiple Swedish surgeons on its content." *Id.*; *see also*

11   Gwinn Decl. ¶¶ 6–7.  Dr. Cobbs later forwarded the Armada Letter to Chief of Staff

12   Dr. Peggy Hutchison and other members of the Medical Executive Committee ("MEC").

13           The word "unanimous"—which Dr. Delashaw now focuses on as one of the two

14   remaining thrusts of his defamation claim against Dr. Cobbs—first appeared in draft

15   minutes prepared by Dr. Jens Chapman. Dkt. 117, Ex. 32 at COBBS00000293.  It was

16   preserved through multiple iterations of the draft Armada Letter and attachments, which

17   had been reviewed and edited by many SNI surgeons. *E.g.,* Dkt. 117, Ex. 33 at

18   COBBS00000367; *see also* Gwinn Decl. ¶¶ 6–8.  Dr. Cobbs did not choose that language;

19   he simply adopted it after the other SNI surgeons implicitly acknowledged its truth. *Id.*

20           Indeed, Dr. Delashaw will be unable to present testimony from any SNI surgeon

21   either (i) that such surgeon told Dr. Cobbs that the statements in the letter were inaccurate

22   before it was sent or (ii) that the majority of SNI surgeons supported Dr. Delashaw's

23   leadership. *See, e.g.*, Gwinn Decl. ¶ 10 ("I had communications with 12 other SNI

24   doctors, all of whom had expressed similar concerns.  Including me, that accounts for 13

25   of the SNI doctors, which is almost all of the department at the time."). ████████████

26
---
[2] Dr. Delashaw does not challenge the veracity of these statements. *See*, Dkt. 140 at 8 (defining scope of
Dr. Delashaw's defamation claim to exclude the reporting of others' concerns about him).

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 3

[redacted]

[redacted]

[redacted]

[redacted] [3]

Although no surgeon has testified in this case that he told Dr. Cobbs the letter was inaccurate before it was sent, Swedish administrators promptly took the position that the stated concerns and expressed desire to remove Dr. Delashaw from his role as SNI Chair were Dr. Cobbs' opinions and not unanimously held. **Ex. B** at 202:6-203:1 (describing the belief of former Swedish CEO Anthony Armada and former Swedish Seattle COO June Altaras that the concerns outlined in the letter were not unanimously held by SNI surgeons); **Ex. C**. Accordingly, even if the "unanimous" language were technically false, it ultimately played no role in shaping the administration's opinion of Dr. Delashaw.

## C.    MQAC's Investigation and Decisions Confirm that the Types of Complaints Raised in the Armada Letter Addressed Matters of Public Concern

"Beginning in May 2016, a DOH investigator, Stephen Correa, interviewed Dr. Peggy Hutchison and six nurses about Dr. Delashaw's behavior as part of a MQAC investigation into Dr. Delashaw." Dkt. 160 at 7. "These individuals consistently reported concerns about: (i) the toxic environment created by Dr. Delashaw's behavior and intimidation; (ii) hypothetical and actual patient safety issues caused by SNI staff discomfort when communicating with Dr. Delashaw; (iii) fear of retaliation; and (iv) nurse and staff departures because of Dr. Delashaw's misconduct." *Id.* at 7–8. "Some of the individuals that Mr. Correa interviewed acknowledged that they had left Swedish Cherry Hill because of Dr. Delashaw." *Id.* at 8.

MQAC investigated the types of complaints raised in the Armada Letter and

---

[3] [redacted]

Notably, Dr. Delashaw has a joint defense agreement with Dr. Oskouian and others and has thus refused to produce many of his communications with Dr. Oskouian. *See* Dkt. 63.

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 4

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

attachments because those complaints addressed matters of public concern.  "MQAC's

express mission is to promote patient safety through the discipline of physicians."

Dkt. 160 at 71.  And, MQAC ultimately concluded that the types of conduct complained

about in Dr. Cobbs' letter put patient safety at risk.  *Id.* at 8–9.  Among its numerous

findings and conclusions adverse to Dr. Delashaw, the MQAC Order stated:

> As a result of [Dr. Delashaw's] disruptive behavior, multiple nurses left
> their positions at Swedish . . . . As a result, patients and ***the public were put
> at increased risk***. (Id. ¶¶ 1.28-1.30.)

*Id.* at 9 (emphasis added; quoting Dkt. 117, Ex. 35 ¶¶ 1.28-1.30).  Based on its findings,

"MQAC concluded that Dr. Delashaw's conduct [was a violation] that '[c]aused moderate

patient harm or risk of moderate to severe patient harm,' WAC 246-16-810."  Dkt. 160 at

10 (quoting Dkt. 117, Ex. 35 ¶ 2.6).  Patient safety—and the actions or omissions of

physicians which place patient safety in jeopardy—are matters of public concern.

### D.     Dr. Cobbs Discussed Dr. Delashaw's Misconduct with Select Third Parties

Dr. Cobbs, in seeking advice on how to proceed, reached out to select third parties,

including Dr. Laws and Dr. Newell, to discuss Dr. Delashaw's misconduct.  Dr. Laws is

Dr. Cobbs' longtime mentor, *see, e.g.,* **Ex. D** at 7:5-6, 16:1-10, and Dr. Newell was SNI's

co-founder, who had been wrongfully terminated by Swedish a month earlier in retaliation

for opposing Dr. Delashaw's misconduct, *see* **Ex. E** at 2-3; *see also* Dkt. 160 at 4.

Dr. Cobbs' limited communications with select third parties about Dr. Delashaw

did nothing to hurt Dr. Delashaw's reputation in those recipients' eyes—Dr. Delashaw

had already effectively done so on his own.  For example, Dr. Laws testified that, before

Dr. Cobbs reached out to him for advice on how to deal with Dr. Delashaw, Dr. Laws

already felt disdain for Dr. Delashaw.  **Ex. D** at 39:10-15.  Similarly, Dr. Newell had

lodged complaints against Dr. Delashaw, which ultimately led to his wrongful termination

by Swedish.  *See, e.g.*, **Ex. E** at 2-3; *see also* Dkt. 160 at 4.  Dr. Delashaw cannot show

that any outsiders' opinion of him worsened because of Dr. Cobbs' correspondence.

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 5

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**E.**     **The Court Concluded that Dr. Delashaw Presented Evidence Sufficient to Allege Dr. Cobbs Acted with Malice with Respect to Only Two Statements**

Dr. Cobbs previously moved for partial summary judgment on several issues. Dkt. 116.  Dr. Cobbs argued, among other things, that his statements within Swedish were protected under the intra-corporate communication privilege because Dr. Delashaw admitted that Dr. Cobbs believed in the truth of his statements to Swedish administrators and, accordingly, could not have acted with actual malice as required to establish forfeiture of the privilege.  *Id.* at 17-20.  The Court concluded that "Dr. Delashaw establishe[d] a genuine dispute of material fact" as to whether Dr. Cobbs acted with actual malice in making only "two of the[] seven categories of statements" identified by Dr. Delashaw: "Dr. Cobbs' claims that (1) SNI surgeons unanimously opposed Dr. Delashaw and (2) Dr. Delashaw caused the mass personnel departures from SNI." Dkt. 160 at 60-61;[4] *see also, id.* at 64 ("The court also concludes, however, that Dr. Delashaw has failed to identify a genuine dispute of material fact on whether Dr. Cobbs acted with actual malice in making any of the other categories of statements identified in Dr. Cobbs' letter to Swedish.").  The Court also concluded that, at least with respect to the intra-corporate communication privilege, "Dr. Delashaw could establish forfeiture of the privilege as to the remaining five categories of statements by relying on other forfeiture arguments."  *Id.* at 69 (citing *Moe v. Wise*, 989 P.2d 1148, 1157 (1999)).  This motion addresses other protections that apply to Dr. Cobbs' statements.

**F.**     **Dr. Mayberg Communicated with the Times without Dr. Cobbs' Knowledge**

While all of the complaints and investigations concerning Dr. Delashaw were swirling in and around Swedish, SNI co-founder Dr. Marc Mayberg, was communicating with the Times about the healthcare system, generally, as well as about Swedish and Dr. Delashaw.  **Ex. F** at 121:25–123:2.  But both Dr. Cobbs and Dr. Mayberg testified that

---

[4] Dr. Delashaw's characterization of the Armada Letter does not accurately describe what it actually says. *See infra*, § V.B.1.

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Dr. Cobbs was entirely unaware of those conversations.  *E.g,*, *id.* at 123:3-11; 125:4-6

("Q.  And did you inform Dr. Cobbs that you had this e-mail exchange with Mr. Baker?

A.  No, I did not."); **Ex. G** at 60:7-61:21.  Dr. Delashaw cannot produce a shred of

admissible evidence that Dr. Cobbs conspired to provide information to the Times.

**G.     Dr. Cobbs Had No Knowledge of or Involvement in Anonymous Emails**

In the fall of 2016, several mass emails were sent from anonymous email accounts

to many health care providers at Swedish, expressing frustration with Swedish

administration and Dr. Delashaw's leadership.  *E.g.*, Dkt. 25-1 ¶¶ 87, 91-92.  Beyond

Dr. Cobbs receiving the emails (as did many others at Swedish), Dr. Delashaw cannot

produce any evidence that he had any knowledge of or about them or their senders.

*See, e.g.*, **Ex. G** at 104:13–20; 118:21–119:1.

### III. STATEMENT OF ISSUES

1.     Should the Court dismiss Dr. Delashaw's defamation claim against

Dr. Cobbs where: (a) the Armada Letter is substantially true and/or its "sting" is true;

(b) Dr. Delashaw cannot present clear and convincing evidence that the challenged

portions of the Armada Letter (i) were false and/or (ii) harmed Dr. Delashaw's reputation;

(c) HCQIA provides immunity for the Armada Letter; and/or (d) Dr. Delashaw is a public

figure and/or the Armada Letter addressed a matter of public concern and Dr. Delashaw

cannot show Dr. Cobbs acted with actual malice?

2.     Should the Court dismiss Dr. Delashaw's conspiracy and tortious

interference claims where Dr. Delashaw (a) cannot show evidence that Dr. Cobbs

participated in the communications; (b) the circumstances are not inconsistent with a

lawful or honest purpose; and/or (c) the Court has already concluded that the only

arguably false information published in the Articles relates to Dr. Delashaw's

compensation incentives and Dr. Cobbs did not provide any false information to the

Times on this issue?

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 7

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

# IV. EVIDENCE RELIED UPON

Dr. Cobbs relies on the Declaration of Malaika M. Eaton in Support of Dr. Cobbs' Second Motion for Partial Summary Judgment ("Eaton Decl.") and Exhibits A–R attached thereto; the Declaration of Ryder Gwinn and Exhibits A–I attached thereto; and the records and files herein.

# V. AUTHORITY AND ARGUMENT

## A.    Summary Judgment Standard

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The movant bears the initial burden of showing there is no genuine issue of material fact and that he is entitled to prevail as a matter of law.  *Id*. at 323.  If the moving party would not bear the burden of persuasion at trial, he satisfies his burden by demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 331. At that point, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

It bears emphasizing that Dr. Delashaw's burden of proof is "clear and convincing" evidence and, therefore, the summary judgment standard is different. Because defamation claims are at odds with the First Amendment, the heightened clear and convincing standard of proof applies to each element.  *Castello v. City of Seattle*, C10-1457MJP, 2010 WL 4857022, at *6 (W.D. Wash. Nov. 22, 2010).  "In deciding a motion for summary judgment on a claim to which a clear and convincing standard of proof applies, the question is whether ***the evidence in the record could support a reasonable jury finding that the plaintiff has established the claim by clear and convincing evidence***."  *Prudential Ins. Co. v. Black*, 211 F.3d 1274 (9th Cir. 2000)

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 8

1   (emphasis added).

2   **B.      The Court Should Dismiss Dr. Delashaw's Defamation Claim.**

3        **1.      Dr. Delashaw must address what the Armada Letter actually says.**

4        Dr. Delashaw articulates seven categories of allegedly defamatory statements.  *See*

5   Dkt. 160 at 60 (quoting Dkt. 140 at 8, 10–11).  But his characterizations are not the issue.

6   As the Court correctly recognized, "Dr. Delashaw cannot accuse Dr. Cobbs of making

7   statements with actual malice without evidence that he made the statements at issue in the

8   first place."  Dkt. 160 at 64.  If Dr. Cobbs did not actually make the statements

9   Dr. Delashaw claims he made, there can be no defamation claim.  Thus, Dr. Delashaw's

10  mischaracterizations that the Armada Letter states "there had been a vote of no

11  confidence" and that "Dr. Cobbs'[] purported concerns were shared by 14 neurosurgeons"

12  cannot give rise to a cognizable defamation claim because, as the Court already

13  concluded, the Armada Letter does not say those things.  Dkt. 60 at 64.

14        Similarly, Dr. Delashaw accuses Dr. Cobbs of stating "departures from SNI were

15  due to 'concerns about quality and an abusive work environment related to

16  Dr. Delashaw.'"  Dkt. 140 at 8.  That is not what the Armada Letter actually says.

17  The correct text is as follows:

18        In the last two years, we have lost 62 team members from this campus. Our
        current functionality as a surgical institute is severely limited by decreased
19        ability to staff and support our operating rooms, provide effective and safe
        care in our ICU/floor, and demonstrate excellence to our patients in the
20        clinical setting. This in turn, has led to a financial downturn for the institute
        and system. The common thread linking these events is the leadership and
21        management style of Dr. Johnny Delashaw.

22  Dkt. 160 at 62 (quoting Dkt. 117, Ex. 26).  When read in context, the "common thread"

23  language clearly refers to the events—loss of staff, loss of functionality, and financial

24  downturn—all of which occurred under Dr. Delashaw's leadership of SNI.  The "common

25  thread" language does not, as Dr. Delashaw suggests, refer to the loss of each of the 62

26  departing team members.  Dr. Delashaw also claims the Armada Letter reports "a mass

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 9

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

exodus of surgeons from SNI." Dkt. 140 at 8.  Again, those words do not appear in the Armada Letter. Instead, the letter refers to lost "team members" and "Swedish/SSF Providers Dismissed, Resigned, Reassigned or Position Eliminated."  The Armada Letter identifies only five SNI surgeons who had been dismissed, resigned, reassigned, or whose position had been eliminated, and there is no dispute regarding the accuracy of those five surgeons' inclusion in the list.  When viewing Dr. Delashaw's claims through the lens of the actual language used in the Armada Letter, it is clear that such claims must fail.

### 2.  The Armada Letter was substantially true.

The focus of Dr. Delashaw's defamation claim against Dr. Cobbs is the Armada Letter.  Yet, Dr. Delashaw impermissibly ignores the bulk of the letter while highlighting minor alleged inconsistencies.  The main thrust or "sting" of the Armada Letter was that Dr. Delashaw's abusive and unprofessional conduct caused turmoil within SNI and placed patient safety at risk.  Dr. Delashaw does not challenge the truth of those comments, and compared to those comments, the categories of allegedly defamatory statements he does challenge are insignificant.

### a.  The Court, not the jury, determines the "sting."

"With respect to falsity, Washington does not require a defamation defendant to "prove the literal truth of every claimed defamatory statement."  *Mohr v. Grant*, 153 Wn.2d 812, 825, 108 P.3d 768 (2005) (internal quotation marks omitted); *see also* Dkt. 160 at 33.  Instead, "[a] defendant need only show that the statement is substantially true or that the gist of the story, the portion that carries the 'sting', is true."  *Id.*  As this Court has recognized, "[t]he [C]ourt, not the jury, determines the 'sting' of a report."  Dkt. 160 at 33 (citing *Mohr*, 108 P.3d at 775).

### b.  The "sting" of the Armada Letter were the numerous serious concerns about Dr. Delashaw's disruptive behavior.

The "gist" or "sting" of the Armada Letter are statements conveying the widely-held concerns about Dr. Delashaw's behavior, which included "a pattern of intimidation,

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 10

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

harassment, and retaliation"; "discouraging the reporting of errors"; "discouraging staff

from asking questions"; and "jeopardizing patient safety with disruptive behavior."

Dkt. 160 at 6 (citing Dkt. 117, Ex. 26).  Instead of alleging defamation based on these

scathing statements, Dr. Delashaw resorts to splitting hairs in order to highlight minor

alleged discrepancies in the Armada Letter's meaning.

 The categories of allegedly defamatory statements Dr. Delashaw articulates can

hardly be said to make up the "sting" of the letter.  Dr. Delashaw argues that the SNI

surgeons who attended an October 30, 2016, meeting with Swedish administrators did not

"unanimously identif[y] serious concerns" about or "lack … confidence and trust" in his

leadership, even though at least a firm majority undisputedly did.  *Compare* Dkt 160 at 60,

*with* Dkt. 117, Ex. 26 at COBBS00002371–72; *see also* Gwinn Decl. ¶ 10.  Additionally,

Dr. Delashaw attacks the statement that his "leadership and management style" was a

"common thread" linking certain events, including the loss of "62 team members" who

had departed the campus over the prior two years, but he does not and cannot present clear

and convincing evidence that he was not a factor in many of those departures.  Dkt. 117,

Ex. 26 at COBBS00002369.  These minor discrepancies, even if not literally true, still

pale in comparison to the rest of the Armada Letter.  Dr. Cobbs does not need to "prove

the literal truth of every claimed defamatory statement," and here, the "sting" of his letter

lie outside of the "claimed defamatory statement[s]."  *Mohr*, 108 P.3d 768, 775.

 c. **Dr. Delashaw has not challenged the truth of the "sting."**

 The "sting" of Dr. Cobbs' letter was the myriad of complaints issued by numerous

providers described above, yet Dr. Delashaw concedes that "*this lawsuit is not about those*

*complaints*."  Dkt. 140 at 6; *see also id*. at 8 ("Dr. Delashaw's claim is not that Dr. Cobbs

alerted Swedish leadership to the claims investigated by the MQAC.").  Knowing he faced

a hopeless battle—in light of, among other things, the scathing findings and conclusions

contained in the MQAC Order—Dr. Delashaw has made the strategic decision **not to**

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*challenge the truth of those complaints*.  Instead, he bases his defamation claim on wordsmithing inconsistencies.  But in a defamation case like this, Dr. Delashaw cannot ignore the forest for the trees.

The fundamental question here is whether Dr. Delashaw can present clear and convincing evidence such that "a rational trier of fact [could] find that [any] substantively false parts of the [Armada Letter] were a factual cause of damage that would not have been caused anyway by the substantively true [or unchallenged] parts of the [letter]." *Schmalenberg*, 87 Wn. App. at 602–03.  The answer is, emphatically: no.  "[N]o reasonable person could find that falsity of this minor sort was a factual cause of [Dr. Delashaw's alleged] damage that would not have occurred anyway, due to the gist of the [letter] being true." *Id.* at 603–04.  The Court should find that the substantial truth of the Armada Letter remains unchallenged and dismiss the defamation claim against Dr. Cobbs.

### 3.    Dr. Delashaw cannot establish by clear and convincing evidence that the remaining statements were false and/or harmed his reputation.

Even if the Armada Letter were not substantially true (it is), Dr. Delashaw's claims would still fail because he cannot satisfy each element as to the two remaining categories of claimed defamatory statements.[5]  A plaintiff claiming defamation must establish (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages.  *Mohr*, 108 P.3d 773.  A defamation plaintiff attempting to survive summary judgment must demonstrate that he "can prove by clear and convincing evidence all of the required elements of [his] defamation claim."  *AR Pillow Inc. v. Maxwell Payton, LLC*, C11-1962RAJ, 2012 WL 6024765, at *6 (W.D. Wash. Dec. 4, 2012); *see also Castello*, 2010 WL 4857022 at *6.  Accordingly, Dr. Delashaw must present clear and convincing evidence such that "a reasonable jury [could] find[]that" he has proven the two remaining

---

[5] As set forth below, *infra*, § V.B.4-5, the Court's earlier ruling that Dr. Delashaw failed to show Dr. Cobbs acted with malice with respect to five of the seven categories of allegedly defamatory statements, Dkt. 160 at 69, necessitates dismissal of claims based on those statements under the HCQIA, because Dr. Delashaw is a public figure doctrine, and because the Armada Letter addresses matters of public concern.

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    statements (1) were false and (2) caused damages.  He cannot do either.

2            a.      **Dr. Delashaw cannot establish by clear and convincing evidence**
                     **that his "leadership and management style" was not a**
3                    **"common thread" linking the loss of many team members.**

4            First, Dr. Delashaw cannot satisfy the clear and convincing standard with respect

5    to the falsity element of the statement in the Armada Letter that his "leadership and

6    management style" were a "common thread" linking several events including, among

7    other things, the loss of "62 team members from th[e] campus."  Dkt. 117, Ex. 26.  For

8    one, Dr. Delashaw was the leader of SNI when the departures occurred.  Additionally,

9    MQAC concluded that Dr. Delashaw "contributed to the loss of experienced personnel,"

10   and that, "[a]s a result of [Dr. Delashaw's] disruptive behavior, multiple nurses left their

11   positions at Swedish."  Dkt. 160 at 8-9 (quoting Dkt. 117, Ex. 35 ¶¶ 1.6, 1.30).[6]

12   Similarly, Mary Fearon, the former Swedish Cherry Hill Director of Perioperative

13   Services testified that she "ethically … could not support the direction of SNI" because of

14   Dr. Delashaw and "started looking for another position."  **Ex. H** ¶ 18.  Other former

15   Swedish providers have offered similar testimony.  *See, e.g.,* **Ex. I** at 40:22–24; **Ex. J** at

16   693:14-20.  To meet his burden of proving that the allegedly defamatory portions of the

17   Armada Letter were not substantially true, Dr. Delashaw would have to present testimony

18   from numerous former SNI physicians, nurses, and support staff members who left SNI

19   during Dr. Delashaw's tenure (but before Dr. Cobbs sent the Armada Letter) that his

20   "leadership and management style" was not "[t]he common thread linking" their

21   departures.  *See,* Dkt. 160 at 62–63 (quoting Dkt. 117, Ex. 26) (discussing the statement in

22   the Armada Letter concerning a correlation between Dr. Delashaw's unprofessional

23   conduct and the exodus of SNI team members).  Notably, however, not one has testified in

24   this case that his or her departure had nothing to do with Dr. Delashaw.  Nor have any

25   _____

26   [6] Although this finding may not have collateral estoppel effect (i.e., the issues adjudicated by MQAC must
     still be litigated here), it is among the plethora of evidence that weighs against Dr. Delashaw, which he will
     have to try to overcome with clear and convincing contradictory evidence of his own.

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 13

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

sworn statements to that effect been produced in discovery.  (Dr. Delashaw's counsel have also confirmed they have not obtained sworn witness statements.  **Ex. K**.)  Dr. Delashaw cannot satisfy this element, and his claim based on the second remaining statement fails.

> **b.**   **Dr. Delashaw cannot prove by clear and convincing evidence that Dr. Cobbs caused reputational damage.**

In his interrogatory answers, Dr. Delashaw identifies two categories of alleged damages (without specifying amounts): reputational damage and lost wages.  *See* **Ex. L** at 5 ("Dr. Delashaw will request damages of a currently unknown amount for (1) loss of income and (2) injury to reputation.").[7]  But in his deposition, Dr. Delashaw attributed all his alleged reputational damage to the Times and MQAC:

> The damning of my reputation came through the Seattle Times articles which basically are distributed throughout the world through -- through Google and the Internet. That's how my reputation got damaged. And then my reputation was also damaged by the medical commission.

**Ex. M** at 876:20–25.  The Court already concluded that Dr. Delashaw cannot claim damage based on MQAC's actions.  Dkt. 160 at 73.  Thus, Dr. Delashaw, by his own admission, has no actionable claim against Dr. Cobbs for reputational damages.

This conclusion is supported by the abundant evidence in the record.  For example, Dr. Delashaw cannot provide clear and convincing evidence in the record that the Armada Letter's use of the word "unanimous" to describe the concerns expressed by SNI surgeons about Dr. Delashaw at the October 30, 2016, meeting caused him harm.  This is because the evidence in the record shows that the Swedish administrators to whom Dr. Cobbs sent the Armada Letter immediately disregarded the "unanimous" language.  Altaras, the former Swedish Seattle COO, testified that both she and former Swedish CEO did not believe Dr. Cobbs' statement that the SNI surgeons were unanimous.  **Ex. B** at 202:6–203:1; *see also* **Ex. C**.  Dr. Delashaw has not presented contradictory evidence, nor has he presented evidence that the "unanimous" language (as opposed to a perhaps more

---

[7] Dr. Delashaw's failure to provide damage amounts should, itself, preclude any damage claims.

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 14

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

appropriate word, like "majority") caused harm to him or his reputation.  *See, e.g.*, *Schmalenberg*, 943 P.2d at 363–64 (plaintiff must be able to show allegedly false portion of statement would have caused damage "that would not have been caused anyway" by the true parts); s*ee also* **Ex. N** at 710:19–712:8 (attributing reputational damage to MQAC's actions).

Similarly, Dr. Delashaw points to external statements Dr. Cobbs made, including to Dr. Laws and Dr. Newell, as bases for his defamation claim.  But he cannot show that such statements further eroded his reputation.  Dr. Laws testified that, before speaking with Dr. Cobbs, he had "disdain" for Dr. Delashaw.  **Ex. D** at 7:5-6, 16:1-10.  Similarly, Dr. Newell sued Swedish (and won a $17.5 million award) because he was terminated in retaliation for raising complaints against Dr. Delashaw.  **Ex. E** at 2-3; *see also* Dkt. 160 at 4.  Dr. Cobbs could not harm Dr. Delashaw by expressing concerns to Dr. Laws and Dr. Newell that they, themselves, already shared, and there is no evidence that anyone Dr. Cobbs communicated with outside Swedish caused harm to Dr. Delashaw.

   c. **Dr. Delashaw cannot prove by clear and convincing evidence that Dr. Cobbs caused lost income.**

In concluding that Dr. Delashaw cannot seek from Dr. Cobbs damages allegedly caused by MQAC's actions, the Court "acknowledge[d] that Dr. Delashaw believes he can prove that actions Dr. Cobbs took outside of his statements to MQAC caused Dr. Delashaw's damages."  Dkt. 160 at 73 n.20.  Yet, the only testimony Dr. Delashaw has offered regarding the cause of his alleged lost income relates to damage caused by MQAC.  **Ex. N** at 710:19–712:8.  Neither Dr. Delashaw nor his expert has explained with clear and convincing evidence how the allegedly defamatory portions of the Armada Letter have prevented Dr. Delashaw from obtaining employment.  *Id.*; *see also* **Ex. O** ¶ 14 (Dr. Delashaw's expert "assumes" he will be unable to mitigate damages but does not explain how the Armada Letter contributed to the alleged inability to mitigate).  So,

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

although the Court left the door open in ruling on Dr. Cobbs' 1st MSJ, it is now time to

close it for lack of evidence of causation.

### 4.     The HCQIA provides immunity for Dr. Cobbs' statements.

Although the Court concluded that Dr. Delashaw may argue Dr. Cobbs forfeited

the intra-corporate communications privilege in ways other than by making statements

with actual malice, that qualified privilege is not the only protection afforded Dr. Cobbs'

statements.  One such protection is found in the Health Care Quality Improvement Act

("HCQIA"), 42 U.S.C. 11111(a)(2)—a federal statute that provides immunity for

individuals, such as Dr. Cobbs, who report professional misconduct about physicians.

#### a.     The HQCIA protects individuals who provide information to a professional review body "regarding the … professional conduct of a physician" absent a showing of knowing falsity.

"Washington provides two layers of legal protection for persons who participate in

a professional peer review action. The first layer comes from federal law."  *Naini v. King*

*Cty. Hosp. Dist. No. 2*, C19-0886-JCC, 2019 WL 5294783, at *4 (W.D. Wash. Oct. 18,

2019) (citing 42 U.S.C. § 11111(a); RCW 7.71.020).  That federal layer of protection, the

HCQIA, primarily covers persons who participate in a "professional review action" and

provides that such participants "shall not be liable in damages ... with respect to the

action."  42 U.S.C. § 11111(a)(1).  But the HCQIA also "separately provides protections

to those who provide information to professional review bodies regarding the competence

or professional conduct of a physician."  *Kunajukr v. Lawrence & Mem'l Hosp., Inc.*,

3:05-CV-1813J, 2009 WL 651984, at *22 n.18 (D. Conn. Jan. 12, 2009).

> Notwithstanding any other provision of law, no person (whether as a
> witness or otherwise) providing information to a professional review body
> regarding the … professional conduct of a physician shall be held, by
> reason of having provided such information, to be liable in damages under
> any law of the United States or of any State … unless such information is
> false and the person providing it knew that such information was false

42 U.S.C. § 11111(a)(2).  "The applicability of this latter provision *is not contingent* on

the existence of a professional review action or the fulfillment of the requirements of

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 16

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

§ 11112(a) [pertaining to such actions], but it does not apply if the information is false and the person providing it ***knew such information was false***." *Kunajukr*, 2009 WL 651984 at *22 n.18 (emphasis added).  The Armada Letter is immune under section 11111(a)(2).

### b.     Swedish and the MEC are "professional review bod[ies]."

The HCQIA defines "professional review body" to mean the hospital as a whole, as well as committees within the hospital tasked with performing peer review activities:

> "[P]rofessional review body" means a ***health care entity*** and the governing body or any committee of a health care entity which conducts professional review activity, and includes any committee of the medical staff of such an entity when assisting the governing body in a professional review activity.

42 U.S.C. § 11151(11) (emphasis added).  Swedish is unquestionably a "health care entity," and the MEC at Swedish, which has oversight over privilege and credentialing at Swedish, *see, e.g.*, **Ex. P** at 171:17-23, is also a "professional review body."  As such, any person who provided information to Swedish (or to its MEC) "regarding the competence or professional conduct of a physician" is immune from liability under section 11111(a)(2) of the statute, regardless of whether the information was provided in connection with or in furtherance of "professional review activity."  *Id.*; *see also Kunajukr*, 2009 WL 651984, at *22 n.18.  Section 11111(a)(2) applies to Dr. Delashaw's claims against Dr. Cobbs.

### c.     The HQCIA immunizes Dr. Cobbs, even where the intra-corporate privilege might not.

Under the HCQIA, the Armada Letter cannot give rise to a civil claim unless Dr. Delashaw can prove that the statements in it were false ***and*** that Dr. Cobbs ***knew*** they were false.  Dr. Cobbs previously sought a narrow ruling that the intra-corporate communication privilege provided immunity because Dr. Delashaw could not prove malice.  In response to that narrow motion, the Court concluded "Dr. Delashaw has failed to establish that Dr. Cobbs acted with actual malice" with regard to five of the seven categories of alleged defamatory statements contained in the Armada Letter.  Dkt. 160 at

LAW OFFICES OF
MᴄNAUL EBEL NAWROT & HELGREN ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

69.  Malice is a lower standard than the exception set forth in section 11111(a)(2).

*Compare id.* at 60 ("Actual malice exists when a false statement is made 'with knowledge

of its falsity or with reckless disregard of its truth or falsity.'") (quoting *Herron v. KING*

*Broad. Co.,* 746 P.2d 295, 301 (1987)), *with* 42 U.S.C. 11111(a)(2) (person providing

information to a hospital about "competence or professional conduct of a physician" is

immune "unless such information is false and the person providing it knew that such

information was false"); *see also* Dkt. 160 at 64.  The Court's conclusion that Dr.

Delashaw could not even meet the actual malice standard leads inevitably to the

conclusion that Dr. Delashaw cannot meet the higher HCQIA standard such that Dr.

Cobbs is immune from claims based on those five categories of statements.  Accordingly,

under this Court's ruling and the HCQIA, the only statements that could conceivably form

a basis for Dr. Delashaw's defamation claims against Dr. Cobbs are that "[t]he surgeons

group unanimously identified serious concerns in three domains" and that Dr. Delashaw's

"leadership and management style" were a "common thread" linking several events,

including the loss of 62 team members.  Dkt. 160 at 60-61.  But as explained below, even

those statements are immune.

> ### d.      Dr. Delashaw cannot prove knowing falsity.

The Court's prior ruling left the door open for Dr. Delashaw to show that

Dr. Cobbs acted with reckless disregard as to the two remaining allegedly defamatory

statements, thus precluding application of the intra-corporate privilege.  *See,* Dkt. 160 at

61-63; *see also Prudential Ins.*, 211 F.3d at 1274.  This, however, is not sufficient to

survive HCQIA.  To overcome this barrier would require Dr. Delashaw to establish by

clear and convincing evidence that Dr. Cobbs' statements were false and he knew they

were false.  Dr. Delashaw cannot make this showing.[8]  For example, not perceiving new

---

[8] Dr. Delashaw cannot show by clear and convincing evidence that Dr. Cobbs acted with knowledge of the statements' falsity because Dr. Delashaw himself admits that Dr. Cobbs believed in the truth of his statements.  Dkt. 117, Ex. 3 at 156:9–11.

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 18

surgeons to be part of the "unanimous" surgeons group, *see* Dkt. 160 at 61-63, is different than admitting knowledge that those new surgeons disagreed with the concerns expressed by the majority of the group.  The former might be reckless, but only the latter could qualify as actual knowledge of falsity.  Similarly, in partially denying Dr. Cobbs' 1st MSJ Motion, the Court noted that Dr. Cobbs was unable to confirm the reasons two former providers departed SNI, and that such admission could give rise to a finding that Dr. Cobbs had "reason to know" that the "common thread" language "may have been an exaggeration."  Dkt. 160 at 63.  But that is a far cry from admitting knowledge that the statement was false.  *Id.*  Dr. Delashaw must present clear and convincing evidence of the latter.  He cannot.

### 5.    Dr. Delashaw must but cannot prove actual malice

The HCQIA unquestionably immunizes Dr. Cobbs for sending the Armada Letter barring a showing of falsity and Dr. Cobbs' actual knowledge of such falsity.  But even if the HCQIA were inapplicable, Dr. Cobbs' statements—internal and external to Swedish— are qualifiedly protected because Dr. Delashaw is a public figure and Dr. Cobbs' communications addressed matters of public concern.  Both require application of the actual malice standard to Dr. Delashaw's defamation claims.

### a.    Whether Dr. Delashaw is a public figure and whether the Armada Letter addressed public concerns are questions of law.

Whether Dr. Delashaw is a public figure and whether Dr. Cobbs' statements addressed a matter of public concern are questions of law appropriately decided by the Court on summary judgment.  *Valdez-Zontek v. Eastmont Sch. Dist.*, 154 Wn. App. 147, 159–60, 225 P.3d 339 (2010) ("Whether the plaintiff is a public figure for purposes of a defamation claim is a question of law for the court to decide."); *Johnson v. Ryan*, 186 Wn. App. 562, 580, 346 P.3d 789 (2015) (court "must determine whether the content, form, and context of the speech are primarily of a private or primarily of a public concern"); *U.S. ex rel. Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058, 1071–72 (W.D. Wash. 2012)

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 19

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1  (concluding on summary judgment that allegedly defamatory statements "involved a

2  matter of public concern").  When either of these determinations are made (as the Court

3  should here), the actual malice standard applies.

4          **b.**        **Dr. Delashaw is a public figure.**

5          Public figures for defamation purposes include "anyone who is famous or

6  infamous because of who he is or what he has done."  *Manzari v. Associated Newspapers*

7  *Ltd.*, 830 F.3d 881, 888 (9th Cir. 2016) (internal quotation marks omitted).  As the United

8  States Supreme Court explained, a defamation plaintiff can be either a "general purpose"

9  public figure or a "limited purpose" public figure.  *Gertz v. Robert Welch, Inc.*, 418 U.S.

10  323, 351, 94 S.Ct. 2997 (1974); *see also Paterson v. Little, Brown & Co.*, 502 F. Supp. 2d

11  1124, 1140–41 (W.D. Wash. 2007).  Importantly, "[a]n individual need not be known

12  outside of his or her particular industry to be a limited purpose public figure."  *Paterson*,

13  502 F. Supp. 2d at 1140–41.  For example, in *Exner v. Am. Med. Ass'n*, a physician was

14  found to be a public figure "in regard to the limited issue of fluoridation" where the

15  physician had "assumed leadership" and "attempted to influence the outcome of the

16  issue."  12 Wn. App. 215, 224, 529 P.2d 863 (1974).  The plaintiff had "written books and

17  magazine articles" and "lectured" on the topic, among other activities.  Limited purpose

18  public figures have also included art restorers and supermarket executives, among others,

19  who were "well-known in the profession, but not outside of it."  *Id.* (citing *Waldbaum v.*

20  *Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C.Cir.1980); *Daniel Goldreyer, Ltd. v.*

21  *Dow Jones & Co., Inc.*, 259 A.D.2d 353, 687 N.Y.S.2d 64 (N.Y.A.D.1999)).

22          When a plaintiff is a public figure, he must prove defamatory statements were

23  made with actual malice.  *Tilton v. Cowles Pub. Co.*, 76 Wn.2d 707, 716–17, 459 P.2d 8

24  (1969).  "The actual malice standard applies to any aspect of a public official's life

25  reflecting upon his or her fitness for the position."  *Valdez-Zontek*, 225 P.3d at 346.

26  Accordingly, so long as the allegedly defamatory statements touch on the limited purpose

LAW OFFICES OF
MᴄNAUL EBEL NAWROT & HELGREN ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

for which a plaintiff is a public figure, the actual malice standard applies. *Id.*

Dr. Delashaw is, at a minimum, a limited purpose public figure in the world of neurosurgery, hospital administration, and physician compensation. His supporters have submitted sworn statements attesting to his visibility in the field of medicine, and in particular, neurosurgery. *See, e.g.*, Dkt. 1 at 61 (Dr. Delashaw is a "world-renowned" surgeon), at 94 ¶ 3 (Dr. Delashaw is "one of the best, busiest, and well-known neurosurgeons in the country"), at 145 ¶ 6 (Dr. Delashaw is "well known in the academic community both nationally and internationally" for publishing "over 60 peer reviewed articles [and] book chapters" and teaching "courses nationally and internationally"). Like the limited purpose public figure plaintiff in *Exner*, Dr. Delashaw has published articles and book chapters, and has lectured extensively both nationally and abroad. *Id.* He is also an infamous recipient of exorbitant public compensation. *See, e.g.*, *Ex-Coach Slips from PERS Pinnacle*, THE REGISTER-GUARD, available at https://www.registerguard.com/rg/news/local/34636347-75/oregon-duck-mike-bellotti-bumped-from-top-pers-recipient-spot-by-a-former-ohsu-doc.html.csp (last accessed, June 25, 2020). As one physician explained to the Times: bringing Dr. Delashaw to your hospital is "like bringing Tom Brady on your team." **Ex. Q** at 333:11–19. Dr. Delashaw must show statements that relate to his conduct as a neurosurgeon and hospital administrator were made with malice.

  c.  **Dr. Cobbs' statements addressed matters of public concern.**

Even if Dr. Delashaw were not a public figure (he is), he must still prove malice if Dr. Cobbs' statements addressed matters of public concern (they do). "[A]n actual malice standard of fault should apply where a private figure plaintiff is allegedly defamed by a statement pertaining to a matter of public concern." *Alpine Indus. Computers, Inc. v. Cowles Pub. Co.*, 114 Wn. App. 371, 393, 57 P.3d 1178 (2002), *amended,* 64 P.3d 49 (Wash. Ct. App. 2003). "[S]peech is of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'"

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207, 1211 (2011) (citations omitted).

Here, concerns about Dr. Delashaw's misconduct—which MQAC found resulted in the departure of health care providers and jeopardized patient safety at the region's premier neuroscience center—unquestionably address a matter of public concern.  Indeed, MQAC went so far as to find that "the public [was] put at increased risk" because of the conduct addressed in Dr. Cobbs' statements.  Dkt. 160 at 9 (emphasis added) (quoting Dkt. 117, Ex. 35 ¶¶ 1.28-1.30).  Because Dr. Cobbs' statements implicated patient and public safety, the actual malice standard applies.

> **d.     The Court already concluded Dr. Delashaw cannot prove Dr. Cobbs acted with actual malice in making certain statements.**

Because the actual malice standard applies to all Dr. Cobbs' statements about Dr. Delashaw irrespective of the intra-corporate communication privilege, the Court should dismiss Dr. Delashaw's defamation claim against Dr. Cobbs with respect to topics about which the Court has already concluded Dr. Delashaw failed to establish Dr. Cobbs acted with actual malice.  Dkt. 160 at 68-69.

**C.     The Court Should Dismiss Dr. Delashaw's Civil Conspiracy and Tortious Interference Claims**

Consistent with the Court's MSJ Order, Dr. Cobbs respectfully requests that the Court dismiss Dr. Delashaw's civil conspiracy and tortious interference claims against Dr. Cobbs to the extent they arise out of any of the alleged defamation dismissed pursuant to the foregoing arguments in sections V.B–F.  *See* Dkt. 160 at 69 n.18 (dismissing "Dr. Delashaw's tortious interference and civil conspiracy claims to the same extent as Dr. Delashaw's defamation claims").  But Dr**.** Delashaw also alleges a broader civil conspiracy involving Dr. Cobbs and others to (i) send anonymous mass emails within Swedish and (ii) to provide the Times with false information about Dr. Delashaw.  Neither claim is true.  And, neither claim can survive summary judgment in light of the lack of evidence and the Court's prior rulings.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1

**1.      Dr. Delashaw's conspiracy and tortious interference claims are
impermissibly based on "mere suspicion."**

2

Dr. Delashaw attempts to hold Dr. Cobbs responsible for at least two anonymous

3

mass emails that were circulated throughout Swedish, and for providing information to the

4

Times.  After more than two years of discovery, Dr. Delashaw is still left with nothing

5

more than suspicion, speculation, and conjecture that Dr. Cobbs was involved in sending

6

those emails and leaking information to the Times.  He was not.  *See, e.g.*, **Ex. F** at

7

121:25–123:2, 123:3-11, 125:4-6; **Ex. G** at 60:7-61:21, 104:13–20; 118:21–119:1.

8

"Where mere suspicion is raised by the evidence, there is not a sufficient basis to support

9

a finding of conspiracy."  *Holman v. Coie*, 11 Wn. App. 195, 215–16, 522 P.2d 515

10

(1974); *see also Johnston v. Hidden Cove Prop. Owners Ass'n LLC*, 195 Wn. App. 1008

11

(2016) (plaintiff's failure to "provide admissible, non-speculative evidence to show that

12

[defendant] was involved in a conspiracy" requires summary judgment dismissal); *Woody*

13

*v. Stapp*, 146 Wn. App. 16, 23, 189 P.3d 807 (2008) ("[S]peculation does not rise to clear,

14

cogent, and convincing evidence of a conspiracy" required to survive summary judgment).

15

Tortious interference claims similarly cannot rest on "[s]uspicion, speculation or

16

conjecture."  *Holman*, 522 P.2d at 526.  Here, Dr. Delashaw cannot hold Dr. Cobbs

17

accountable for the anonymous mass emails or Times articles simply because he

18

(wrongly) suspects Dr. Cobbs' involvement.

19

**2.      Dr. Cobbs' efforts to remove Dr. Delashaw from a leadership role are
not inconsistent with a lawful or honest purpose.**

20

Dr. Cobbs admittedly consulted with SNI surgeons including, without limitation,

21

Ryder Gwinn, Jens Chapman, Stephen Montieth, Akshal Patel, Rod Oskouian, and Marc

22

Mayberg, to prepare a joint letter to Armada outlining Swedish employees' concerns

23

about Dr. Delashaw.  And, Dr. Cobbs admittedly worked with Dr. Mayberg, Dr. Gwinn,

24

and others to encourage administration to remove Dr. Delashaw from his leadership role.

25

But these actions cannot form the basis for a civil conspiracy claim.

26

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 23

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

"The test of the sufficiency of the evidence to prove a conspiracy is that the circumstances must be *inconsistent* with a lawful or honest purpose and reasonably consistent *only* with existence of the conspiracy." *Corbit v. J. I. Case Co.*, 70 Wn.2d 522, 529, 424 P.2d 290 (1967) (emphasis added). "The legal concept of civil conspiracy does not necessarily encompass or apply as to all of the verbal or physical actions of parties who, by happenstance, are interested in the same general subject matter." *Id.*; *see also Seaside Inland Transp. v. Coastal Carriers LLC*, 2:17-CV-00143-SMJ, 2019 WL 4918747, at *10 (E.D. Wash. Oct. 4, 2019). Working with co-workers to remove from power an abusive, intimidating, retaliatory, and disruptive leader is neither "inconsistent with a lawful or honest purpose" nor "consistent *only* with the existence" of an unlawful conspiracy. *Corbit*, 70 Wn.2d at 529. The Court should dismiss Dr. Delashaw's civil conspiracy claim based on Dr. Cobbs' efforts to alert Swedish, as Swedish's code of conduct required him to do, **Ex. R** at JDEL_017082, of Dr. Delashaw's misconduct.

### 3. The Court concluded that the only potentially false information contained in the Times' Articles related to financial incentives.

This Court already concluded that the Times' Articles are true, with the limited exception of statements concerning Dr. Delashaw's financial incentives to pursue a high patient volume. Dkt. 160 at 53-54. To the extent there remain any conspiracy or tortious interference claims based on allegations that Dr. Cobbs or his purported co-conspirators provided false information to the Times, such claims must be dismissed unless Dr. Delashaw can show that Dr. Cobbs provided the Times with false information that the Times published. Dr. Delashaw can do neither: he cannot show Dr. Cobbs provided the Times with false information on that issue, and he cannot establish that the Times published any information from Dr. Cobbs on that issue. *See supra* § V.C.1.

### VI. CONCLUSION

For the foregoing reasons, Dr. Cobbs respectfully requests that the Court grant summary judgment dismissal of Dr. Delashaw's claims against Dr. Cobbs.

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 24

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

DATED this 8th day of July, 2020.

McNAUL EBEL NAWROT & HELGREN PLLC


By: s/Malaika M. Eaton
    Malaika M. Eaton, WSBA No. 32837
    Jehiel I. Baer, WSBA No. 46951

600 University Street, Suite 2700
Seattle, Washington  98101
(206) 467-1816
meaton@mcnaul.com
jbaer@mcnaul.com

SOMERVILLE, LLC


By: s/John Q. Somerville
    John Q. Somerville, *Admitted Pro Hac Vice*

300 North Richard Arrington Boulevard, Suite 710
Birmingham, Alabama  35203
(205) 871-2183
jqs@somervillellc.com

Attorneys for Defendant Charles Cobbs

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 25

1

## <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on July 8, 2020, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system, which will send notification of such filing

4   to all parties of record.

5          DATED: July 8, 2020.

6                                                   By:   s/Malaika M. Eaton
                                                         Malaika M. Eaton, WSBA No. 32837
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEF. COBBS' 2D MOT. FOR SUMM. J.
(No. 18-cv-00537-JLR) – Page 26

3847-002 jf23fx10bc.004 2020-07-08

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816