The Honorable James L. Robart

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

JOHNNY B. DELASHAW, JR.,

9
                                    Plaintiff,

10

11                     v.

12   SEATTLE TIMES COMPANY, and
     CHARLES COBBS,

13
                                    Defendants.

14

CASE NO. 2:18-cv-00537-JLR

THE SEATTLE TIMES' REPLY IN
SUPPORT OF ITS SECOND MOTION
FOR SUMMARY JUDGMENT

**NOTED ON MOTION CALENDAR:
July 31, 2020**

15
16
17
18
19
20
21
22
23
24
25
26

THE SEATTLE TIMES' REPLY IN SUPPORT OF ITS
SECOND  MOTION FOR SUMMARY JUDGMENT
[2:18-cv-00537-JLR]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

**TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ............................................................................ ii

3
4        A.    He Did Not Make a Prima Facie Case that the Incentive Statements
Damaged Him. ...................................................................................... 1

5        B.    He Did Not Make a Prima Facie Case that the Incentive Statements Were
False. .................................................................................................... 4

6        C.    Delashaw Failed to Make a Prima Facie Case that the Seattle Times Acted
7              with Fault in Reporting on the Swedish Contracts. ................................ 6

             1.    Delashaw is a limited purpose public figure. ............................... 6
8
9             2.    The material facts showing lack of fault are undisputed. ......................... 10

             3.    Delashaw's status as a limited purpose public figure is a question
10                of law. ..................................................................................... 11

11    CONCLUSION ............................................................................................. 12

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

**TABLE OF AUTHORITIES**

2

Page(s)

**Cases**

3

4

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ....................................................................................12

5

*Blair Foods, Inc. v. Ranchers Cotton Oil*,
   610 F.2d 665 (9th Cir. 1980)..........................................................................3

6

7

*Bose Corp. v. Consumers Union*,
   466 U.S. 485 (1984) ....................................................................................12

8

*Clardy v. Cowles Pub. Co.*,
   81 Wash. App. 53, 912 P.2d 1078 (1996) ...................................................6

9

*Crane v. Arizona Republic*,
   972 F.2d 1511 (9th Cir. 1992)....................................................................12

10

11

*Exner v. Am. Med. Ass'n*,
   12 Wn. App. 215, 529 P.2d 863 (1974) .......................................................7

12

*Foretich v. Capital Cities/ABC, Inc.*,
   37 F.3d 1541 (4th Cir. 1994) ........................................................................6

13

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ......................................................................................8

14

15

*Herron v. KING Broad. Co.*,
   112 Wn.2d 762, 776 P.2d 98 (1989) .................................................2, 3, 4, 5

16

*Jinni Tech, Ltd. v. Red.com, Inc.*,
   2020 WL 1932696 (W.D. Wash. Apr. 20, 2020) .........................................2

17

*Littleton v. Grover*,
   2019 WL 1150759 (Wash. Ct. App. Mar. 12, 2019)......................................7

18

19

*Malone v. Strong*,
   2018 WL 1386125 (W.D. Wash. 2018) .......................................................3

20

*Mohr v. Grant*,
   153 Wn.2d 812, 108 P.3d 768 (2005) ..........................................................4

21

*Paterson v. Little, Brown & Co.*,
   502 F. Supp. 2d 1124 (W.D. Wash. 2007) ...................................................9

22

23

*Schmalenberg v. Tacoma News, Inc.*,
   87 Wn. App. 579, 943 P.2d 350 (1997) ....................................................1, 2

24

*Simon v. Murphy*,
   2014 WL 585831 (W.D. Wash. Feb. 14, 2014) ...........................................6

25

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Taskett v. KING Broad. Co.*,
   86 Wn. 2d 439, 546 P.2d 81 (1976) ...................................................................7, 8, 10

*Thompson*,
   130 Wn.2d 368, 922 P.2d 1343 (1996) ..................................................................2

*Virgil v. Time, Inc.*,
   527 F.2d 1122 (9th Cir. 1975).................................................................................12

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

To survive summary judgment, Plaintiff Johnny Delashaw was required to make a prima facie showing that the Seattle Times' reporting about the Swedish contracts proximately caused him damage, **and** that the reporting about those contracts was not substantially true, **and** that the Times acted with fault in reporting on those contracts.  Having failed to make this showing as to each required element, his remaining claim against the Times should be dismissed.[1]

**A.      He Did Not Make a Prima Facie Case that the Incentive Statements Damaged Him.**

Starting with the Court's summary judgment order, the sole surviving claim against the Times is the allegedly defamatory reporting "about Dr. Delashaw's financial incentives to pursue a high patient volume."[2]  The Court dismissed "the remainder of Dr. Delashaw's defamation claims against the Times," specifically his claims concerning "unnecessary surgeries," "concurrent surgeries," "misleading data," and "patient harm."[3]  The Court reiterated 11 days later: "Delashaw's defamation claim against the Times is limited to statements regarding Dr. Delashaw's financial incentives."[4]

But, instead of turning to this Court's ruling to "understand[] his remaining claim" against the Times, Delashaw turns to "the words of the USC journalism professors" that Delashaw "'put profits ahead of patient care and safety.'"[5]  Ignoring the Court's ruling and the reporting regarding his financial incentives, he points to a single statement in the article that the Court considered in **rejecting** his "patient harm" defamation claim: The "'aggressive pursuit of more patients, more surgeries and more dollars … place patient care in jeopardy.'"[6]

For Delashaw to recover damages, the allegedly false statement must have caused the damages.[7]  As explained in the Times' motion, "to avoid summary judgment," he was required to

---

[1] Delashaw does not dispute that dismissal of his remaining defamation claim requires dismissal of his tortious interference claim.  Seattle Times 2nd Mot. for Summ. J. ("ST 2nd MSJ"), Dkt #193 at 6 n.16.

[2] Order on Defs.' Mots. for Summ. J. ("SJ Order"), Dkt #207 at 53:11-54:3.  ECF-assigned page numbers are used throughout this brief.

[3] *Id.* at 54:3-7, 41:12-13, 46:7-9, 48:14-16, 53:6-8.

[4] Order on Discovery Mots. & Mot. for Reconsideration, Dkt #179 at 5:10-12.

[5] Delashaw's Opp'n to the Seattle Times' 2nd Mot. for Summ. J. ("Opp'n"), Dkt #239 at 6:5-8.

[6] *Id.* at 6:8-11; *see also* SJ Order at 48:20-49:2l.

[7] *Schmalenberg v. Tacoma News, Inc.*, 87 Wn. App. 579, 588, 943 P.2d 350 (1997).

---

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

"make a prima facie showing of facts that would raise a genuine issue of material fact" "that the communication proximately caused damages."[8]  The "communication" that he was required to show caused him damage is the only communication remaining at issue against the Times: "about Dr. Delashaw's financial incentives to pursue a high patient volume."[9]  He may not recover damages suffered as a result of the Times' publication of nondefamatory statements – including each of the statements or implications at issue in the claims the Court dismissed.[10]

Delashaw has offered no evidence that the reporting about the Swedish Neuroscience Institute ("SNI") surgeons' financial incentives to pursue a high patient volume caused him damage.[11]  Instead, he cites **only** to four Times statements about the effect of other parts of the articles or the year-long series as a whole.  First, he cites to this statement that the "series"

> **exposed double-booked surgeries, risky medical procedures and lapsed protocols at a prominent Seattle hospital.**  The series led to state and federal investigations, the hospital CEO's resignation, suspension of a surgeon's medical licenses, and widespread reform, including largely banning overlapping surgeries.[12]

Delashaw substituted an ellipsis for the bolded language above.  Notably, these omitted words attribute the effects of "the series" to the reporting the Court ruled nondefamatory and **not** to the statements about the Swedish contracts.  Likewise, he points to the statements that "**[t]he package** produced swift and sweeping impact," "[t]he impact of **the project** has been swift and sweeping," and "prominent surgeon Dr. Johnny Delashaw resigned after The Times' **investigation**."[13]

Undoubtedly, the Times' truthful, nondefamatory reporting led to important changes at Swedish and prompted regulatory agencies to take a closer look.  But Delashaw may not recover from The Seattle Times any damages that resulted from "the series," "the package," "the project,"

---

[8] *Jinni Tech, Ltd. v. Red.com, Inc.*, No. C17-0217JLR, 2020 WL 1932696, *9 (W.D. Wash. Apr. 20, 2020).
[9] SJ Order at 53:11-54:3.
[10] *Herron v. KING Broad. Co.*, 112 Wn.2d 762, 771-72, 776 P.2d 98 (1989), *modified on nonrelevant grounds by Richard v. Thompson*, 130 Wn.2d 368, 922 P.2d 1343 (1996); *Schmalenberg*, 87 Wn. App. at 598, 602.
[11] While Delashaw does not dispute his high volume, he seeks to justify it through the expert report of Dr. Robert Spetzler.  7/27/20 Delashaw Decl., Dkt #240 ¶ 3 & Ex. 1.  Not only is this immaterial to the issues raised in the Times' motion, but it is improper because Delashaw's lawyer advised the Times a month ago that Delashaw withdrew that report and would not be calling Spetzler at trial.  7/31/20 Goldman Decl., Ex. 1.
[12] Opp'n at 6 n.3; 7/20/20 Farmer Decl., Dkt #220-3 at 5 (emphasis added).
[13] Opp'n at 6 n.3 (emphasis added); 7/20/20 Farmer Decl., Dkt #220-4 at 4, #220-5 at 3, #220-6 at 13.

THE SEATTLE TIMES' REPLY IN SUPPORT OF ITS
SECOND MOTION FOR SUMMARY JUDGMENT - 2
[2:18-cv-00537-JLR]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  or the "investigation" because he offers no evidence that the allegedly false statements about the

2  employment contracts have "resulted in damage which is distinct from that caused by the true

3  negative statements also contained in the same report."[14]

4          "For the Court's convenience," Delashaw also appends to and "incorporates" in his brief

5  three pages from his response to the Times' motion to exclude his experts.[15]  The only evidence he

6  offers in the appended pages is his own testimony that no one will hire him because of "the

7  Times's articles."[16]  Not only do these appended pages not offer any evidence that the financial

8  incentive statements caused him damage, but they ignore the undisputed fact that the MQAC

9  proceedings addressed his disruptive behavior, not SNI's compensation structure.[17]  And the DOH

10  investigation explicitly stated that it did **not** concern physician financial incentives.[18]

11          His testimony that unnamed employers said they would not hire him because of "**the**

12  **Articles**" also is hearsay[19] that "may not be considered in deciding whether material facts are at

13  issue in a motion for summary judgment."[20]  The only admissible evidence on this point is from

14  his expert who testified that Delashaw could have gotten a job at numerous hospitals throughout

15  the country after he resigned from Swedish, had he sought employment.[21]

16          In sum, even if "the link between incentive pay and patient harm was central to the

17  Articles,"[22] the patient harm claim has been dismissed and there is **no** link between incentive pay

18  and Delashaw's damages.  For this reason alone his final claim must be dismissed.[23]

---

19  [14] *Herron*, 112 Wn.2d at 771-72.

20  [15] Opp'n at 1 n.4.

[16] *Id.*, Appendix A at 6:4, 6:8, 6:10, 6:11, 7:22; *see also id.* at 7:5 ("its articles"), 7:8 ("Seattle Times report"), 7:11

21  (the "Seattle Times' findings"), 7:14 ("the Times investigation"), 7:16 ("The Times report").

[17] 7/8/20 Wion Decl., Dkt #191-1 at 55, 61.

22  [18] 3/2/20 Farmer Decl., Dkt #130-9 at 2.

[19] ST Reply in Supp. of Mot. to Exclude, Dkt #229 at 7:13-9:20.

23  [20] *Malone v. Strong*, No. 3:14-cv-05974-RBL-JRC, 2018 WL 1386125, *2 (W.D. Wash. 2018) (citing *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980)).

24  [21] ST 2nd MSJ at 6:5-9.

[22] Opp'n at 7:2-4.  Although he says the "Times clearly claimed that his pay structure led to his placing his financial

25  interests over patient care," *id.* at 2:4-5, tellingly, Delashaw cited no such language in the article.

[23] At the end of his **causation** discussion, Delashaw contends that a "jury can reasonably find falsity" in the "Times'

26  claim of harm to patients" based on "the most reliable objective data that the Times ignored ...." *Id.* at 7:7-10.  He is wrong.  The jury many not consider the "patient harm" or "misleading data" claims  SJ Order at 48:14-16, 53:6-8.

THE SEATTLE TIMES' REPLY IN SUPPORT OF ITS
SECOND MOTION FOR SUMMARY JUDGMENT - 3
[2:18-cv-00537-JLR]

**B.     He Did Not Make a Prima Facie Case that the Incentive Statements Were False.**

A defamation claim regarding a true statement does not go to a jury, it gets dismissed on summary judgment.[24]  Delashaw misapprehends this basic tenet of First Amendment law and misstates the legal standard for the Times "now seek[ing] to rewrite the Articles."[25]

Delashaw must prove the Times' reporting about the Swedish employment contracts is not true, which does not require "the literal truth of every claimed defamatory statement."[26]

> A defendant need only show that the statement is substantially true or that the gist of the story, the portion that carries the sting, is true.  The sting of a report is defined as the gist or substance of a report when considered as a whole.[27]

In other words, "[w]here a report contains a mixture of true and false statements, a false statement (or statements) affects the sting of a report only when significantly greater opprobrium results from the report containing the falsehood than would result from the report without the falsehood."[28]  The sting of the Times' report is determined by the Court.[29]

The "report" here is the entire article.  Its sting comes from its nondefamatory reporting about the surgeons' ugly fight, "unnecessary surgeries," "concurrent surgeries," "misleading data," and "patient harm" – the dismissed claims – and that Delashaw was "under contracts that incentivized him to pursue a high-volume patient load from October 2014 to April 2015."[30]  No greater opprobrium resulted from inclusion in the article, by implication or otherwise, that Delashaw's 2015 and 2016 contracts **also** incentivized high volume.  With or without reporting that Delashaw was incentivized in 2015 and 2016 to produce high volume, the sting is the same.

We return to what the Times reported about the incentive contracts:

> The doctors in the neuroscience unit are incentivized to pursue a high-volume approach with contracts that compensate them for large patient numbers and

---

[24] In faulting the Times for filing its first summary judgment motion "before taking the depositions it now seeks to invoke after the fact," Opp'n at 7:18-20, Delashaw ignores that he prevented the Times from taking these depositions. ST Letter Motion, Dkt #151.  Leave to do so required a trip to the Court.  Minute Entry, Dkt #152.

[25] Opp'n at 8:10.

[26] *Mohr v. Grant*, 153 Wn.2d 812, 825, 108 P.3d 768 (2005); SJ Order at 33:3-10.

[27] *Mohr*, 153 Wn.2d at 825 (quotation marks & citations omitted).

[28] *Herron*, 112 Wn.2d at 769 (quotation marks & citations omitted).

[29] SJ Order at 33:9-10.

[30] *Id.* at 34:20-35:2.

THE SEATTLE TIMES' REPLY IN SUPPORT OF ITS
SECOND MOTION FOR SUMMARY JUDGMENT - 4
[2:18-cv-00537-JLR]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

> complicated surgical techniques…. The revised contracts at Chery Hill's SNI program ended the pooling system, according to records and interviews. Surgeons would be paid almost entirely on their production, as measured by Relative Value Units, or RVUs…. Surgeons with production-based contracts can increase their revenue by adding more stages to a surgery.[31]

The sting of this reporting (alone) is captured in the first sentence: Swedish incentivized Delashaw and the SNI surgeons to pursue a high-volume approach with contracts that compensated them for large volume.[32] Whether he literally was compensated more for each RVU he performed under his 2015 ("Third") and 2016 ("Fourth") contracts is irrelevant because it did not add to the sting that he got paid an astronomical amount for producing "herculean hours."[33] So, **no** "significantly greater opprobrium" resulted from **including** statements about the "production-based contracts."

Moreover, it is indisputedly true about each of Delashaw's Swedish contracts.[34] His Third and Fourth Contracts incentivized him to pursue a high-volume approach because his high income was dependent on high production. As the Court held, "the Third Contract ███████████████████ ███████████████████████████████████████████████████████████████████████ ███ ███████████████████████████████████████████████████████████████."[35] And the Court ruled that the same was true for the Fourth Contract.[36] In addition, Delashaw concedes there was a "level of production that could have adversely affected future compensation."[37]

Not only was he incentivized to produce at the 90th percentile of his peers nationally in 2015 and 2016, but he was rewarded in 2016 with a new and more lucrative contract. Although the Third Contract paid $1,400,000 annually for clinical compensation for a three-year term,

---

[31] 7/8/20 Wion Decl., Dkt #191-4 at 336 (ST_0041496), 341c(ST_0041501), 347 (ST_0041507).
[32] *See* SJ Order at 34:20-35:2).
[33] Opp'n at 9:22-10:1. Again, Delashaw will not take "no" for an answer and presses the "patient harm" and "unnecessary surgeries" claims dismissed by this Court. *See id.* at 8:21-9:2; *id.* at 9:10.
[34] Delashaw argues that the "statistics do not lie," citing only to a paragraph in his declaration devoid of any statistics. *Id.* at 9:15-17 (citing Delashaw Decl., Dkt #240 ¶ 8).
[35] SJ Order at 25:8-11 (quoting the Third Contract). Delashaw takes issue with Swedish's SNI contract manager explaining how the contracts worked. While this testimony is proper, *Mitchell Family Trust v. Artists Rights Enforcement Corp.*, No. 11-CV-0024-TOR, 2014 WL202009, *2 (E.D. Wash. Jan. 17, 2014), we agree the Court in the final instance determines the meaning of these contracts. And the Court already agreed with Swedish.
[36] SJ Order at 26:2-4.
[37] Opp'n at 9:14-15. While Delashaw's lawyers consider production at the 90th percentile to be a "low level of production," *id.*, the math, inherently, speaks for itself.

THE SEATTLE TIMES' REPLY IN SUPPORT OF ITS
SECOND MOTION FOR SUMMARY JUDGMENT - 5
[2:18-cv-00537-JLR]

**within one year**, he renegotiated an increase to $1,624,000[38] **based on his 2015 productivity**,[39] putting him substantially above the 90th percentile compensation.[40]

The sting of the article (and of the reporting about the Swedish contracts) is true. For this reason also Delashaw's remaining claim fails.

**C.   Delashaw Failed to Make a Prima Facie Case that the Seattle Times Acted with Fault in Reporting on the Swedish Contracts.**

Delashaw and the Times agree that whether he is a limited purpose public figure should be decided on summary judgment.[41]

**1.      Delashaw is a limited purpose public figure.**

Delashaw claims he is not a limited purpose public figure because the Times has not met each of the five elements set forth in *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541 (4th Cir. 1994). He argues that the "failure to meet one of the required elements is fatal to [the Times'] argument[.]"[42] Not only does he mischaracterize the standard applicable in Washington, even if the strict test employed in the Fourth Circuit applied (it does not), the Times meets it. Under any reasonable interpretation of Washington law, Delashaw is a limited purpose public figure.

Delashaw's partial description of the development of this area of the law in Washington culminates in a mischaracterization of the *Clardy* case, a decision by Division III of the Washington Court of Appeals. The most pertinent part of *Clardy* states:

> We believe that balancing the right to report on issues of public interest against the right of private citizens to be free from defamatory comments requires consideration of more than simply whether the plaintiff voluntarily injected himself or herself into the fray. We therefore adopt the five-part test outlined by the court in *Foretich* as a set of **nonexclusive considerations** for determining whether a plaintiff in a defamation case is a limited-purpose public figure. We then apply those **nonexclusive considerations** ….[43]

---

[38] *Id.* at 10:3-4. His lawyers' unsupported claim that the "very high Swedish RVUs" resulting from his work "had no impact on his income," *id.* at 4:19-20, is not evidence of anything. *Simon v. Murphy*, No. C12-0979-JLR, 2014 WL 585831, *3 (W.D. Wash. Feb. 14, 2014).

[39] 2/6/20 Goldman Decl., Dkt #110, Ex. 21 at SWE_005563.

[40] *Id.* at SWE_005570.

[41] Opp'n at 12:6.

[42] *Id.* at 13:22-23.

[43] *Clardy v. Cowles Pub. Co.*, 81 Wash. App. 53, 62, 912 P.2d 1078 (1996) (emphasis added).

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1       Delashaw argues that because the Fourth Circuit treats its own five-part test *as a set of*

2   *mandatory factors*, the *Clardy* court did the same – notwithstanding that it expressly adopted the

3   five-part test "*as a set of nonexclusive considerations*."  A "consideration" is **not** a mandate but

4   refers to "a fact or a motive taken into account in deciding or judging something"[44] or the "careful

5   weighing of the reasons for or against something."[45]

6       Delashaw clearly understands that "nonexclusive considerations" does not connote

7   anything mandatory, which explains why he needed to alter the language of the *Clardy* court's

8   holding (and employ a double-negative) to support his argument: "That the Washington Court of

9   Appeals *held these to be 'nonexclusive factors'* does not mean they are not mandatory."[46]  Unlike

10   "considerations," "factors" **can** be mandatory.  But *Clardy* **does not** use the word "factors."  Not

11   only is the language in *Clardy* unambiguous, just last year Division II of the Court of Appeals

12   described *Clardy's* "nonexclusive considerations" as a balancing test, just as the Times does:

13   "Washington follows a five-part balancing test for identifying limited public figures."[47]

14       Significantly, neither the Washington Supreme Court nor Division I of the Court of

15   Appeals have adopted the five-part *Clardy* balancing test.[48]  However, in *Taskett*, the Supreme

16   Court confirmed that there is no mandatory test, but rather two important considerations:

17          The reason for distinguishing private individuals from public officials and figures is
18          twofold.  First, both public officials and public figures have greater access to the
       various 'channels of effective communication and hence have a more realistic
19          opportunity to counteract false statements than private individuals normally enjoy.'

20          Second, in formulating the proper standard to be applied, a more important

---

21   [44] The Oxford Dictionary Delashaw cites to define "nonexclusive," Delashaw Opp'n. at 13:15-16, defines
22   "consideration" as "Careful thought, typically over a period of time" or "A fact or a motive taken into account in
deciding or judging something."  *See* https://www.lexico.com/en/definition/consideration (last visited 7/30/20).
   [45] *See* https://www.merriam-webster.com/thesaurus/consideration (last visited 7/30/20); https://www.merriam-
23   webster.com/dictionary/consideration (last visited 7/30/20).
   [46] Opp'n at 13:12-13 (emphasis added).
24      [47] *Littleton v. Grover*, No. 51217-3-II, 2019 WL 1150759, *6 (Wash. Ct. App. Mar. 12, 2019), amended on
reconsideration in part (July 2, 2019) (citing *Clardy*).
25      [48] *See Taskett v. KING Broad. Co*., 86 Wn. 2d 439, 445-46, 546 P.2d 81 (1976); *Exner v. Am. Med. Ass'n*, 12 Wn.
App. 215, 529 P.2d 863 (1974) ("an individual voluntarily injects himself or is drawn into a particular public
26   controversy and thereby becomes a public figure for a limited range of issues" and "assume[s] special prominence in
the resolution of public questions'").

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

consideration is the basis distinction between the nature of the state's interest in protecting private individuals as opposed to public individuals in defamation ….[49]

The *Taskett* court further explained that the second "more important consideration" included whether the "individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."[50]

Thus, where the Washington Supreme Court has identified the first two of the five elements in the *Foretich* test as considerations of unequal importance, the *Clardy* court could not make both elements (or any additional elements) mandatory as Delashaw suggests. *Clardy's* use of non-mandatory "nonexclusive considerations," is consistent with *Taskett*. Although it is not clear that the Supreme Court ultimately would agree to add three considerations to the two it already identified, for purposes of its motion, the Times has addressed – and met – all five.

**Consideration #4**. The Times outlined the public controversy surrounding Delashaw's role at SNI, the changes he implemented, and the havoc those changes and his leadership created, all before the articles.[51] He dismissively describes this public controversy as an "internecine squabble [that] involved workplace issues."[52] He cites no authority to suggest that a matter that starts its life as a workplace "squabble" cannot become a public controversy. Here, it did.

The turmoil at SNI created by Delashaw was widely-discussed in Seattle, up and down the coast, and nationally.[53] Defending against Cobbs' pending summary judgment motion, Delashaw asserts than an allegedly defamatory letter was "widely published" before the Times' articles:

> Dr. Cobbs and his co-conspirators then **widely published** the Armada letter incorporating these pretexts, falsely reporting there had been a mass exodus of surgeons from SNI, falsely attributing such departures to concerns about quality and abusive work environment related to Dr. Delashaw, falsely claiming Dr. Delashaw had forced all referrals to go to him, falsely claiming a document he circulated constituted "minutes" of a meeting regarding Dr. Delashaw, and falsely claiming the SNI surgeons were unanimous in opposing Dr. Delashaw.[54]

---

[49] *Taskett*, 86 Wn. 2d at 445 (citing and quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)).
[50] *Id*. at 446 (quoting *Gertz*).
[51] ST 2nd MSJ § II.D.1.a.
[52] *Id.* at 15:14.
[53] *Id.* § II.D.1.a(iv).
[54] Delashaw Opp'n to Cobbs' 2nd Mot. for Summ. J., Dkt #242 at 21:8-13.

THE SEATTLE TIMES' REPLY IN SUPPORT OF ITS
SECOND MOTION FOR SUMMARY JUDGMENT - 8
[2:18-cv-00537-JLR]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1     Specific to the issue of financial incentives, one of Delashaw's initial efforts was to

2 eliminate the pooling system and implement a productivity-based model.[55]  Dr. Mayberg testified

3 that this "was destructive to collegiality" and "pitted the surgeons against each other as

4 competitors."[56]  In fact, Delashaw opposes Cobbs' summary judgment motion by highlighting

5 various surgeons' frustrations about compensation and other changes he made at SNI.[57]

6     Delashaw also dismisses the public DOH investigation as arising "from an internal

7 management dispute [by] unhappy personnel[.]"[58]  The chaos surrounding Delashaw, his

8 leadership at SNI, and the tensions related to changes he made for the stated goal of enriching SNI

9 and its surgeons were part of a widely-known controversy and a matter of public interest that

10 "touches upon serious issues relating to … community values … [and] public safety."[59]

11     **Considerations #2 and #3**.  Delashaw played a central role in the public controversy long

12 before the articles.  He had been installed as the chair of SNI and had wielded the authority of that

13 leadership position (and the power stemming from his unique relationship with upper

14 management) in a way that placed him squarely at the center of the storm.  He voluntarily assumed

15 this prominent position and his national reputation and referral network are what allowed him to

16 maintain an exceedingly high surgical volume.  That volume, and the money he made for

17 Swedish, further solidified his ability to run roughshod over his colleagues and coworkers, and to

18 avoid, for so long, the serious repercussions from having a high number of quality complaints.[60]

19     **Consideration #1**.  Before publication, Delashaw repeatedly rejected the Times' interview

20 requests.[61]  He claims he did not speak with the Times because of a Swedish "policy."  No

21 evidence of such a policy was provided.  However, he concedes that "Just before publication,

[55] 7/8/20 Goldman Decl., Dkt #196-7 at JDEL_120712.
[56] 7/8/20 Goldman Decl., Dkt #196-3 at 29:17-30:15.
[57] Delashaw Opp'n to Cobbs' 2nd Mot. for Summ. J., Dkt #242 at 6.
[58] Opp'n at 15:10-11.
[59] *Paterson v. Little, Brown & Co.*, 502 F. Supp. 2d 1124, 1140 (W.D. Wash. 2007) (quotes & citation omitted).
[60] SJ Order at 3:19-4:9.
[61] 7/8/20 Baker Decl, Dkt #194 ¶¶ 12-13.

THE SEATTLE TIMES' REPLY IN SUPPORT OF ITS
SECOND MOTION FOR SUMMARY JUDGMENT - 9
[2:18-cv-00537-JLR]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Swedish … allowed me to provide written responses," which he did.  Previously, he asserts it was the Swedish "public relations group" that would speak with reporters.[62]

He also enlisted others, including former fellows, to contact the Times in his defense before publication.[63]  And he obtained favorable media reports from this hometown newspaper.[64] He readily had access to effective means of communication.

**Consideration #5**.  Delashaw does not dispute that the entire controversy surrounding SNI and him persisted up to and through publication.

Balancing these five considerations confirms Delashaw is a limited purpose public figure.

### 2.      The material facts showing lack of fault are undisputed.

Delashaw mixes his arguments about actual malice and negligence and in so doing misses the critical differences between the two standards of fault.  Be that as it may, the material evidence is undisputed and he fails to articulate a prima facie case of fault under either standard.

He begins by complaining that the "only evidence" of the absence of actual malice is the reporter's testimony.[65]  However, to establish actual malice, it is Delashaw who must make a prima facie case by clear and convincing evidence that the Times "knew the statement was false, or acted with a high degree of awareness of its probable falsity ….   The standard for determining actual malice is subjective, focusing on the defendant's belief in or attitude toward the truth of the statement."[66]  Delashaw has offered no such evidence and the reporter's testimony is undisputed.

The rest of Delashaw's argument that the Times failed to properly investigate the Swedish contracts only matters if the standard is negligence.[67]  And he offers no evidence that the Times or its reporter "knew, or, in the exercise of reasonable care, should have known that the" reporting about the SNI employment contracts was false.[68]  The reporter attested to the thorough and careful

---

[62] 7/27/20 Delashaw Decl., Dkt #240 ¶ 10.
[63] Opp'n at 20 n.32.
[64] ST 2nd MSJ, Dkt #193 at 25:2-4.
[65] Opp'n at 14:10-12.
[66] SJ Order at 60:4-9 (quotation marks & citations omitted).
[67] Again, Delashaw improperly attempts to shoehorn claims dismissed by this Court.  Delashaw Opp'n at 20:5-10.
[68] *Taskett*, 86 Wn.2d 439.

THE SEATTLE TIMES' REPLY IN SUPPORT OF ITS
SECOND MOTION FOR SUMMARY JUDGMENT - 10
[2:18-cv-00537-JLR]

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

reporting he did regarding the employment contracts.[69]  Delashaw does not dispute any of those facts.[70]  He does not dispute that the reporter received "a spreadsheet detailing surgeon production and how the new contracts with greater emphasis on productivity would likely alter each surgeon's compensation.  That spreadsheet included Dr. Delashaw's production and RVU compensation rate."[71]  Delashaw does not dispute that Swedish refused to discuss the SNI employment contracts with the reporter and that Delashaw refused altogether to be interviewed.[72]

Notwithstanding these undisputed facts, he argues the reporter "made no effort to determine … Delashaw was on an RVU-based contract" or "to ascertain the truth."[73]  The testimony he offers says nothing of the sort.[74]  In fact, he testified that no one, other than Swedish administration (who refused to speak to the Times), knew he shifted in 2015 from a straight RVU-based contract to the contract requiring him to produce at the 90th percentile to be compensated.[75]

Whether the standard of fault is actual malice or negligence, there is nothing for the jury to decide.  Delashaw does not dispute any of the Times' evidence nor does he suggest anything else the Times should have done.[76]

### 3.  Delashaw's status as a limited purpose public figure is a question of law.

Because there is no genuine dispute of a material fact regarding Delashaw's status as a limited purpose public figure, his Seventh Amendment argument is irrelevant.  It also is wrong.

---

[69] 7/8/20 Baker Decl., Dkt #194 & Exs. A-I.

[70] In its motion, the Times quoted an email from Swedish about the obvious quality of the Times' investigation.  ST 2nd MSJ at 27:3-8.  It was mistakenly not included with the Times' declaration.  It is included in the Goldman Declaration filed herewith at Ex. 3.  Delashaw complains that the Times "has submitted no evidence that Swedish in fact believed [the email] to be true."  Opp'n at 14 n.27.  On that score, the Swedish email speaks for itself.  And, it is Delashaw who bears the burden of proof here and he offers no evidence that Swedish did not mean what it said.

[71] 7/8/20 Baker Decl., Dkt #194 ¶ 6.

[72] Id. ¶¶ 11-12, Exs. G-H.

[73] Opp'n at 19:13-16 & n.28.

[74] See 7/20/20 Farmer Decl., Dkt #220-12 at 278:18-20, 283:5-10.

[75] 7/31/20 Goldman Decl., Ex. 2 at JDEL_002418:16-23.

[76] He offers only his journalism expert's testimony to claim "abject failure" by the Times "to adhere to even minimum professional standards."  Opp'n at 20:10-11 & n. 33.  In the referenced testimony, his expert said **nothing** about the Times' reporting on the Swedish employment contracts.  7/27/20 Farmer Decl., Dkt #241-4, Ex. 28.

THE SEATTLE TIMES' REPLY IN SUPPORT OF ITS
SECOND MOTION FOR SUMMARY JUDGMENT - 11
[2:18-cv-00537-JLR]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

He argues that the courts have had it wrong for decades and that the question of whether he

is a public figure is one of fact for the jury.  The United States Supreme Court begs to differ.

> The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact.  **Judges**, as expositors of the Constitution, **must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold** that bars the entry of any judgment that is not supported by clear and convincing proof of "actual malice."[77]

Thereafter, in a defamation case involving public figure and actual malice issues, the Supreme

Court determined that the "clear and convincing standard of proof should be taken into account in

ruling on summary judgment motions [and] does not denigrate the role of the jury."[78]

The cases Delashaw points to also do not support his argument.  In *Crane v. Arizona*

*Republic*, the Ninth Circuit relied upon Supreme Court precedent to determine that whether the

plaintiff was a public official and whether there was sufficient evidence to submit the question of

actual malice to a jury were questions of law for the court.[79]

## CONCLUSION

Delashaw's final remaining claim against The Seattle Times is baseless.  To avoid

summary judgment, he was required – but failed – to make a prima facie case as to each of three

independent elements, causation, falsity, **and** fault in regard to the reporting about the Swedish

employment contracts.  This lawsuit, with its attendant burden on the Times' First Amendment

rights, has been pending for more than two years and should be brought to an end now.

/////

////

///

//

/

---

[77] *Bose Corp. v. Consumers Union*, 466 U.S. 485, 510 (1984).
[78] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).
[79] 972 F.2d 1511, 1517 (9th Cir. 1992); *see also Virgil v. Time, Inc.*, 527 F.2d 1122, 1125 (9th Cir. 1975).

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   DATED this 31st day of July, 2020.

2                                                   Respectfully submitted,

3                                                   SUMMIT LAW GROUP PLLC
                                                    Attorneys for Defendant Seattle Times Company
4

5   By *s/ Jessica L. Goldman*
           *s/ Christopher T. Wion*
6           *s/ Tanya Nesbitt*
           Jessica L. Goldman, WSBA #21856
7          Christopher T. Wion, WSBA #33207
           Tanya Nesbitt, WSBA #56122
8          315 Fifth Avenue South, Suite 1000
           Seattle, WA  98104
9          Telephone: (206) 676-7000
           *jessicag@summitlaw.com*
10         *chrisw@summitlaw.com*
           *tanyan@summitlaw.com*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26