HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHNNY B. DELASHAW, JR.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SEATTLE TIMES COMPANY, and CHARLES COBBS,<br><br>　　　　　　Defendants. | Case No. 18-cv-00537-JLR<br><br>DR. DELASHAW'S RESPONSES TO THE SEATTLE TIMES'S MOTIONS IN LIMINE<br><br>NOTED ON MOTION CALENDAR:<br>August 7, 2020 |

DR. DELASHAW'S RESPONSES TO THE
SEATTLE TIMES'S MOTIONS IN LIMINE
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 2

II. MOTIONS IN LIMINE ..................................................................................................... 3

    A. Motion A: in re *Dismissed Claims: Falsity and Fault.* ............................................ 3

    B. Motion B: in re *The Article About Talia Goldenberg.* .......................................... 5

    C. Motion C: in re *Dismissed Claims: Damages.* ....................................................... 7

    D. Motion D: In re *Digital Producer Nick Eaton and Slack Messages.* .................... 8

    E. Motion E: In re *Statements Regarding Why Prospective Employers Will Not Hire Delashaw.* ............................................................................................................... 9

    F. Motion F: In re *Confidential Sources.* ................................................................... 9

    G. Motion G: In re *The Seattle Times Editorial*, <u>and</u> Motion J: In re *Connection Between the Seattle Times and the MQAC Licensing Proceeding* ........................ 9

    H. Motion H: In re *Evidence About CHARS and Other Data.* <u>and</u> Motion I: In re *Data Reporter Justin Mayo.* ..................................................................................... 9

    I. Motion I: In re *Data Reporter Justin Mayo* ............................................................ 9

    J. Motion J: In re *Connection Between the Seattle Times and the MQAC Licensing Proceeding* ............................................................................................................... 9

    K. Motion K: In re *Cumulative Evidence.* ................................................................. 9

III. CONCLUSION ............................................................................................................... 12

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 1
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

I.  INTRODUCTION

Dr. Delashaw's defamation claims against the Seattle Times (the Times) are limited to "statements regarding physician financial incentives in the Second Times Article."[1] As the Court has previously noted, "[t]he potential impact that Swedish's compensation model had on Dr. Delashaw's practice is one of the focal points of the Articles and this lawsuit,"[2] and the parties dispute "whether Dr. Delashaw was incentivized to pursue a high-volume patient load after April 2015."[3]

Dr. Delashaw believes that the Times has misapprehended the Court's order on its first motion for summary judgment. The Times' construction would exclude claims based on a central theme of the articles: the alleged adverse impact of Dr. Delashaw's (incorrectly characterized) compensation structure on patient care – an adverse impact the Times expressly stated and invited its readers to accept or to infer throughout its second *Quantity of Care* article.

> **The O.R. Factory: High Volume, Big Dollars, Rising Tension**
> . . .
> A steady churn of high-risk patients undergoing invasive brain and spine procedures allowed Cherry Hill to generate half a billion dollars in net operating revenue in 2015 — a 39 percent increase from just three years prior.
> . . .
> But the aggressive pursuit of more patients, more surgeries and more dollars has . . . placed patient care in jeopardy, a Seattle Times investigation has found.
> . . .
> The doctors in the neuroscience unit are incentivized to pursue a high-volume approach with contracts that compensate them for large patient numbers and complicated surgical techniques.[4]

The claim that Dr. Delashaw worked to treat more patients to make more money, and that patients were placed at risk, and even harmed, because Dr. Delashaw responded to that incentive,

---

[1] Dkt. 160, p. 36.
[2] Dkt. 160, p. 22.
[3] Dkt. 160, p. 36.
[4] The Seattle Times, *The O.R. Factory: High Volume, Big Dollars, Rising Tension* (Feb. 10, 2017), Dkt. 130-1, p.27.

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 2
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

was a central theme of the Times' false narrative.  This lie is the gist of Dr. Delashaw's defamation claim.  The Times drew a direct link between Dr. Delashaw's (falsely reported) financial incentives and actual or potential harm to his patients.  It was this link that incited attention from the Times' audience.  Without it, the Articles would have drawn a yawn.  Imagine the headline "Doctor Paid Based on Number of Patients Treated," or "Attorney Paid Based on Number of Hours Worked."  Neither allegation, standing on its own, would sell papers or draw the public and government's interest and ire.

Papers were sold only because the Times shouted:  rush through surgeries to make more money thereby harming, or at least endangering, patients.  This damning and false narrative destroyed Dr. Delashaw's reputation and career.

## II.   RESPONSES TO SEATTLE TIMES'S MOTIONS IN LIMINE

### A.   Motion A:  in re *Dismissed Claims: Falsity and Fault.*

The Court has said that Dr. Delashaw's defamation claims against the Times are limited to "statements regarding physician financial incentives in the Second Times Article."[5]  Dr. Delashaw and the Times disagree over what these words mean.

The Times argues that the only alleged falsehood to be tried is that Dr. Delashaw's compensation deal gave him an incentive to pursue a high-volume patient load when in fact it did not.  Dr. Delashaw would like to suggest that no newspaper would have run this article; no one would have read it.  The Articles drew more than attention; they drew a virulent response.  That happened because the real and very clear message of the Articles was that the (false) financial incentives led to patient risk and even harm.  Throughout the Articles, the Times expressly stated that such risk, and such harm, arose directly from the falsely described compensation structure.[6]

---

[5] Order, Dkt. 160, p. 36.

[6] "The potential impact that Swedish's compensation model had on Dr. Delashaw's practice is one of the focal points of the Articles and this lawsuit."  Dkt. 160, p. 22.

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 3
(Case No. 18-cv-00537-JLR)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

The Times falsely claimed "the aggressive pursuit of more patients, more surgeries and more dollars . . . placed patient care in jeopardy," linking cause (physician incentives) and effect (patient risks).  The fundamental sting or gist of the articles and the core false statements at issue in this case are that Dr. Delashaw was incentivized to, and did, place profits over patient safety.

This claim is completely and indisputably false.  Dr. Delashaw was not paid based on patient volume after April 2015.  More important, the Times' claim that this falsely described compensation system harmed patients is independently false.  There was zero patient harm and zero increase in patient risk.  While handling the most complex and difficult cases, Dr. Delashaw provided excellent care.

The Times falsely represented the critical facts.  Dr. Delashaw was on salary.  Dr. Delashaw's patient outcomes were excellent.  All evidence of falsity and fault related to this statement is relevant and probative.

The Times has tried to leverage Federal Rules of Evidence 402 and 403 not merely to exclude specific evidence (e.g., a particular document or topic of testimony), but to exclude *all* evidence and argument regarding falsity and fault except evidence and argument regarding the "the Swedish employment contracts still at issue."  There is no basis for imposing such a sweeping restriction.  The Times failed even to ask what Dr. Delashaw's compensation arrangement was, and as a result printed lies about it. The Times made false claims of a "churn" of surgeries that placed "patient care in jeopardy."  Evidence regarding the falsity of these statements and the Times's failure to publish correct information about the impact of Dr. Delashaw's financial incentives (information the Times had but declined to share with its readers) is highly relevant to essential elements of Dr. Delashaw's defamation claim: the falsity of the Times' statements and the Times' negligence or actual malice.  Rule 402's requirement is that evidence meet the minimum threshold of relevance.  This standard provides no basis for the broad inverse exclusion of evidence the Times seeks here.

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 4
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

Evidence regarding the falsity of the Times' statements regarding physician incentives and the impact of those misrepresented incentives on patient safety, plus evidence of its (at least) negligence in ascertaining the facts are highly probative of Dr. Delashaw's defamation claim. They may not be excluded under Rule 403. The Times makes the sweeping assertion that the probative value of *all* evidence and argument that is not confined to Dr. Delashaw's employment contract is substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, delay, wasting time, or cumulation of evidence. "[E]xcluding evidence under Fed. R. Evid. 403 at the pretrial stage is an extreme measure. '[A] court must have a record complete enough on the point at issue to be considered a virtual surrogate for a trial record.'" *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 274 (3d Cir. 1991) (citation omitted). Even at trial, exclusion under Rule 403 is "an extraordinary remedy to be used sparingly." *Gametech Int'l Inc. v. Trend Gaming Sys., L.L.C.*, 232 Fed. App'x 676, 678 (9th Cir. 2007) (quoting *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995)).

The Times has not met its burden of showing the probative value of *all* possible evidence not directly connected with the employment contracts is *substantially* outweighed by the dangers against which Rule 403 provides protection. The Times will have the opportunity to raise individual Rule 403 objections at trial, objections tailored to specific evidence. The Court should reject the Times' effort to obtain the broad pre-trial exclusion order it seeks here.

**B.      Motion B: in re *The Article About Talia Goldenberg*.**

The Times seeks to exclude evidence and argument regarding its article, "A Lost Voice," arguing it is irrelevant and would confuse and mislead the jury. Like its sister article, "The O.R. Factory," "A Lost Voice" was designed to further the narrative that Dr. Delashaw made more money by performing more surgeries and placed profits over patient safety. This heart-wrenching story of a tragedy for which Dr. Delashaw had no responsibility was deviously designed to promote the rest of the false narrative about Dr. Delashaw.

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 5
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

> Delashaw, who had been recruited to the Cherry Hill neuroscience unit in 2013, had a reputation as a workhorse whose ability to churn through surgeries could single-handedly alter an institution's financial picture.
> . . .
> The available medical records don't show how much time Delashaw spent in the operating room while Talia was under anesthesia. Delashaw and a spokeswoman for Swedish declined to comment for this story, citing patient privacy.
>
> . . .
> Dr. Delashaw was in California for his conference when he learned of Talia's disastrous turn. He flew back that night and assured the family that he was "cautiously optimistic" about her prognosis.
> . . .
> She held on for 37 more hours. At 10:41 p.m. on Feb. 20, Talia Ranit Goldenberg died.
> . . .
> It's not publicly known whether Talia's unexpected death led to changes at Swedish-Cherry Hill, or whether anyone faced internal discipline.
> Dr. Delashaw has since been promoted. He's now the chairman of neurosurgery.[7]

"A Lost Voice" said Dr. Delashaw was a "workhorse" who would "churn through surgeries," and invited readers to draw the inference that he rushed through surgeries, thereby causing surgical errors and contributing to Ms. Goldenberg's death.  These deliberately false inferences coalesced with the lies in the companion piece the Times ran the same day, *The O.R. Factory: High Volume, Big Dollars, Rising Tension*, which specifically, and falsely, claimed that Dr. Delashaw made more money if he performed one more operation and thus "placed patient care in jeopardy."[8]

Dr. Delashaw will use *A Lost Voice* at trial to establish the Times had a pre-conceived narrative it was determined to tell: that Dr. Delashaw had placed profits over patient safety with disastrous consequences; that the Times was willing to cynically exploit Ms. Goldenberg's death to sensationalize its false claims about Dr. Delashaw; and that the Times' investigation was inept:  it omitted critical facts, and reported outright falsehoods, throughout its *Quantity of Care* series of

---

[7] The Seattle Times, *A Lost Voice* (Feb. 10, 2017), Dkt. 130-1, pp. 17, 24-25.

[8] The Seattle Times, *The O.R. Factory: High Volume, Big Dollars, Rising Tension* (Feb. 10, 2017), Dkt. 130-1, p.27.

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 6
(Case No. 18-cv-00537-JLR)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

articles.

Pretrial exclusion of *A Lost Voice* under Rule 403 is equally unwarranted. It is an "extreme measure," *Hines*, 926 F.2d at 274 (citation omitted), and "an extraordinary remedy to be used sparingly," *Gametech Int'l Inc.*, 232 Fed. App'x at 678 (citations omitted). The Times claims the article could confuse or mislead the jury, but one must ask the question: why did the Times juxtapose this article with the lies about Dr. Delashaw's compensation? If the two are so obviously unrelated, why did the Times apparently not see it this way when it printed them side by side? The Times has not met its burden of proving the probative value of *A Lost Voice* is substantially outweighed by the risks of confusing or misleading the jury.

C.     **Motion C: in re *Dismissed Claims: Damages.***

The Times seeks to limit Dr. Delashaw's ability to prove the Times caused his damages, seeking exclusion of all evidence of causation, with a narrow exception permitting evidence that the Times's specific misstatements about his employment contracts caused his damages.

The Times is trying to exclude evidence of the link the Times itself claimed existed between its (false) compensation claims and risk or harm to patients. Ultimately, this Times argument is as false as the Articles. It is painfully obvious that the Times hoped to, and did, sell papers and internet coverage by claiming that Dr. Delashaw a) was paid per surgery and b) as a result endangered patients. Dr. Delashaw will advance evidence at trial that this actionable statement, both expressly stated and implied throughout the Times article *The O.R. Factory: High Volume, Big Dollars, Rising Tension*, caused his damages. The evidence will show that publication of the Times's false allegations against him that linked his financial incentives to patient risks triggered a public firestorm, undermined his ability to care for his patients and caused him to resign, pressured state authorities to summarily suspend Dr. Delashaw's medical license, and fatally undermined his reputation such that no medical institution will now hire him.

The Times actually celebrated this impact of its reporting: Dr. Delashaw's resignation,

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 7
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

government investigations, and the suspension of Dr. Delashaw's medical license.[9]  This evidence is directly relevant to an essential element of Dr. Delashaw's defamation claim: that the Times' false statements caused his damages and the Times was happy about it.

The Times also argues the broad restriction it seeks is essential to prevent jury confusion under Rule 403 because the jury could find a non-defamatory statement caused Dr. Delashaw's damages.  But the Times fails to show this risk substantially outweighs the probative value of permitting Dr. Delashaw to prove the Times's false statements about his financial incentives and the impact of those incentives.  The Times' concern is best addressed through careful jury instructions rather than the extreme measure of exclusion.  The Times will have an opportunity to cross-examine Dr. Delashaw and put on evidence to prove its narrative—that Dr. Delashaw's damages were caused by the Times's non-defamatory statements or other actors.  A properly instructed jury can resolve the parties' factual dispute over the cause of Dr. Delashaw's damages.  The Times is not entitled to the sweeping exclusion of evidence it requests.[10]

**D.      Motion D: In re *Digital Producer Nick Eaton and Slack Messages*.**

Three days before the Times published its article *The O.R. Factory: High Volume, Big Dollars, Rising Tension*, Seattle Times employees working on the articles exchanged messages observing that "we're really going after Dr. Johnny Delashaw," and calling him "Dr. Death, as I've just started referring to him in these meetings, since that's essentially what we're insinuating."[11]  The Times seeks exclusion of these messages and Mr. Eaton's testimony at trial, but provides no

---

[9] *E.g., Seattle Times Investigative Journalism Fund: DONATE*: the "Quantity of Care series . . . led to state and federal investigations, . . . [and] suspension of a surgeon's medical license . . . ." Dkt. 220-3, p.2-5; Seattle Times Application, *Innovative Storytelling Award*, p. 3 (Oct. 2, 2017) ("The package produced swift and sweeping impact. One week after publication, the state Department of Health launched an investigation. . . . Within three weeks, Talia's surgeon resigned.") Dkt. 220-4, p.4.

[10] Dr. Delashaw understands that the Court has ruled that the Times article *A Lost Voice* is not itself actionable and cannot be used to prove the Times's false statements caused Dr. Delashaw's damages, and stipulates to this restriction on its use of the "A Lost Voice" article.  However, as discussed above, *A Lost Voice* is nonetheless relevant to the falsity of the Times' defamatory statements and its negligence or actual malice.

[11] Dkt 130-3, p. 2.

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 8
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

adequate basis for doing so.

The Times argues Mr. Eaton played no role in researching, writing, or editing its *Quantity of Care* articles, but cannot contend Mr. Eaton had no knowledge of or familiarity with those involved in the researching, writing, and editing of the articles. The very messages at issue in this motion indicate that Mr. Eaton worked with both Mr. Baker and Mr. Doig, the lead reporter and editor for these articles.[12]

The Times also mistakenly argues Mr. Eaton's messages and testimony are irrelevant to Dr. Delashaw's claim that the Times defamed him by falsely stating Dr. Delashaw was incentivized to treat more patients and jeopardize patient safety. Mr. Eaton's messages and testimony are relevant to prove that the Times targeted Dr. Delashaw and reflected its narrative against him: that he was "Dr. Death" and the Times was insinuating as much in its *Quantity of Care* articles. This evidence is highly relevant to the Times's allegation Dr. Delashaw was incentivized to treat more patients and jeopardize patient safety, the Times's bias, the Times's lack of care or actual malice, and the motivation underlying it serial omission of critical facts that contradicted its false claim that Dr. Delashaw was incentivized to prioritize profits over the safety of his patients.

There is no basis for excluding this evidence under Federal Rules of Evidence 401, 402, 403, or 602. The Times has failed to demonstrate that the probative value of this evidence (described above) is substantially outweighed by any of the risks Rule 403 is designed to protect against or that it is entitled to the extraordinary remedy of exclusion of Mr. Eaton's messages and testimony before trial. The Times argument based on Rule 602 is equally baseless. Mr. Eaton has personal knowledge of his own written communications, his work at the Times, his familiarity with the *Quantity of Care* articles, and his work with Mr. Baker and Mr. Doig.

E. **Motion E: In re *Statements Regarding Why Prospective Employers Will Not Hire Delashaw.***

---

[12] *Id.*, ("Doig and I just spent half and hour talking Mike Baker down from the ledge because we're not doing exactly his idea for the newsletters.").

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 9
(Case No. 18-cv-00537-JLR)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

The Times defamatory claim that Dr. Delashaw was financially incentivized to pursue a high-volume patient load at the expense of patient safety caused a public scandal, forced him to resign from his position at SNI, and caused the temporary suspension of his medical license. Dr. Delashaw will testify to his unsuccessful efforts to obtain employment in the years following the publication of *The O.R. Factory*, and the explanations multiple potential employers have offered for their refusal. The common thread among these explanations is the Times's defamatory statements about Dr. Delashaw:

> I have heard from Legacy, down in Portland, and *they said until I get a retraction from The Seattle Times, that they can't afford any bad publicity and they can't hire me*. I have gotten the same response from a number of different places, including Montana, part of Washington, I can't remember the name of the group. But I've also gotten it from Florida. And New York has -- they are pretty pessimistic about it. They are worried about -- *they are all worried about bad publicity because of The Seattle Times*.
>
> . . .
>
> I have tried to get an interview at a hospital called Eisenhower, in the Palm Springs area, and they don't want to take the risk because, they have told me through a neurosurgeon, that *they were too worried about the media coverage that Mr. Baker and Seattle Times has done*. They are afraid that that kind of media coverage will come to their hospital and they can't afford it.
>
> I have talked to Dr. Lawton at the Barrow Neurological Institute, and *he has told me I am radioactive, and until The Seattle Times writes a retraction, that l probably-- it would not be a good interest for them to be hiring me*.
>
> I talked to Anish Bhardwaj, who is the provost for the University of Texas Medical Branch, who I have known for years, and he would very much like me to do something at the University of Texas Medical Branch, *but because of The Seattle Times, he has told me I am radioactive and we have to see what happens with this lawsuit*.[13]

Dr. Delashaw's is not excludable as hearsay under Federal Rules of Evidence 801 and 802. First, Dr. Delashaw's testimony regarding what potential employers told him about their reasoning for not hiring him is subject to Rule 803(3), which excepts from the hearsay rule "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan)." The declarants in this

---

[13] Dkt. 220-2, p. 16-19 (Delashaw Dep. 515:18-516:3, 518:21-519:150) (emphasis added); *see also* Dkt. 240, ¶ 13.

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 10
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

instance (the potential employer) explained their existing state of mind and motive in refusing to hire Dr. Delashaw; i.e., the declarant could not hire him in light of the Seattle Times's accusations against him.  *See Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013) (out-of-court statements by mentally ill individual held in jail describing traumatic dress-out procedure subject to Rule 803(3) hearsay exception to show mental state); *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 252 (3d Cir. 1999) (upholding the admission of employees' testimony that customers "told them that they no longer shopped at the plaintiffs' stores because of the [defendant's] operations"); *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 90 (1st Cir. 2017) (upholding admission of out of court statements that purchaser intended to buy product because "[o]ut-of-court statements by a customer or employee may be admissible under Rule 803(3) to show intent or motive").

The Times concedes that testimony regarding potential employers "unwillingness to hire" Dr. Delashaw relates to the employers' "state of mind."[14]  Moreover, the Times agrees that "under Ninth Circuit precedent," Dr. Delashaw "may tell the jury that potential employers are not willing to hire him."[15]  The Times may argue that Dr. Delashaw cannot tell the jury the potential employers' explanation of why they would not hire him, but that is not the law.  While Rule 803(3) "bars 'statements as to why [the declarant] held the particular state of mind, or what he might have believed that would have induced the state of mind,'" "[t]he bar applies only when the statements are offered to prove the truth of the fact underlying the memory or belief."  *Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013).  This means that Dr. Delashaw may not prove the *truth* of what *the Times* said about Dr. Delashaw through the statements of the potential employers, which of course he has no intent to do.  Rather, his testimony is offered only to prove that what the Times said led to the potential employer's mental state—i.e., motive in refusing to consider Dr. Delashaw on his own merits.

---

[14] Dkt. 229, p. 9.

[15] Dkt. 229, p. 8.

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 11
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

The testimony is also admissible for the non-hearsay purpose of proving that potential employers were aware of the articles.[16]  "[S]tatements introduced to show that a party had certain information, rather than for the truth of the information, are not hearsay." *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1124 (9th Cir. 2004) (citing *United States v. Castro,* 887 F.2d 988, 1000 (9th Cir.1989).  *See also United States v. Quinones-Chavez*, 641 Fed. App'x 722, 725 (9th Cir. 2016) ("the officer's testimony was introduced for the non-hearsay purpose of explaining the officer's motivation").  A potential employer's knowledge of the articles is an essential predicate fact to a finding that employers refused to hire Dr. Delashaw because of the articles, and is thus relevant to Dr. Delashaw's claim against the Times.   If the jury were instructed that it could use Dr. Delashaw's testimony regarding what potential employers had told him to establish only the potential employers' knowledge of the Times' *Quantity of Care* articles, the jury could nonetheless reasonably infer the Times defamatory statements caused Dr. Delashaw's damages based on the employer's knowledge of the articles, the nature of the defamatory statements made in the articles, the fact that Dr. Delashaw's medical license was restored and he was nonetheless unable to find work, and the timing of the articles' publication and Dr. Delashaw's resulting inability to obtain employment.  *See United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir. 1987) (jury may "draw reasonable inferences from proven facts"); *Mosby v. Baker*, No. 16-3028, 2019 WL 4345978, at *5 (D. Nev. Sept. 12, 2019) ("jury may 'draw reasonable inferences from basic facts to ultimate facts'" (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))).

F.      **Motion F: In re** *Confidential Sources.*

There is no dispute among the professional journalists involved in this case that sources who are willing to go on the record are considered much more reliable than sources that condition their willingness to speak with a reporter on a promise of confidentiality (anonymity).  Indeed, the

---

[16] Hearsay is defined in relevant part as "a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement."  FRE 801(c).

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 12
(Case No. 18-cv-00537-JLR)

Times's own internal guidelines make clear that the use of confidential sources should be treated as a last resort. Nevertheless, Mr. Baker relied heavily on confidential sources in reporting the Articles. This should be no surprise since Mr. Baker offered confidentiality at least to any source who requested it. The result of his practice—skewed stories full of falsehoods (whether directly stated or quoted from others) and reflecting the private agenda of disgruntled competitors—proves the reason for the rule.

Mr. Baker's decision to flout his employer's policies and report the Articles in this way is relevant to show the Times's culpability and to evaluate which consequences of the Times's publication of false statements about Dr. Delashaw were foreseeable.

The Times argues that this evidence nevertheless should not be admitted because there is a statutory protection against the compelled disclosure of the identity of confidential sources. But acknowledging the existence of confidential sources in no way identifies them. Moreover, since the Times has been clear that it could not simply choose to identify its confidential sources, admitting evidence of the Times's reliance on them cannot make it more likely that the Times will disclose the identities of its confidential sources. Meanwhile, admitting evidence of the Times's overreliance on confidential sources may incentivize its reporters to proceed with caution when deciding whether to rely on confidential sources in the future, which is as it should be.

The Court should not permit the Times to hide from its knowing decision to rely on sources who it had reason to believe were less credible than the sources who were willing to go on the record to explain why the narrative the Times was pursuing then published was false.

G.  **Motion G: In re *The Seattle Times Editorial*, and Motion J: In re *Connection Between the Seattle Times and the MQAC Licensing Proceeding***

Dr. Delashaw will prove that the Times's false reporting led directly to his inability to continue working in his profession and destroyed his career, a result repeatedly touted by the

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 13
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

Times as of its own making.[17]  As a direct result of the Times's articles and their perpetual republication on the internet, numerous hospitals rejected Dr. Delashaw's efforts to practice and his valuable referral practice has been destroyed.  The jury will consider that no hospital will employ Dr. Delashaw because the Times's articles have branded him forever as an irresponsible, greedy surgeon.

The Times claims that Dr. Delashaw's losses were not its responsibility but instead were caused by the MQAC's summary suspension of his medical license (Motion, p. 13).  But the Times's attempt to disclaim responsibility for the predictable consequences of its actions is a factual question for the jury.  Under Washington law, it "is a question for the trier of fact" whether "[a]n intervening cause breaks the chain of causation" and can be established "only if the intervening event is so unexpected that it falls outside the realm of the reasonably foreseeable." *Davis v. Baugh Indus. Contractors, Inc.*, 150 P.3d 545, 547 (Wash. 2007) (citation omitted).  In making that determination, the jury will consider that the summary license suspension resulted directly from the Times's articles.

The Times itself crows that its articles created a public firestorm and pressured the State to act.  Within days of publishing, the Times published an article taking credit for renewed state investigations of Swedish and Dr. Delashaw:

> State health regulators have launched an investigation into the practices of Swedish Health Services' Cherry Hill hospital, days after a Seattle Times report uncovered wide-ranging concerns about patient care at the facility.
>
> David Johnson, a spokesman with the state Department of Health, said Thursday a case-management team authorized the new investigation after reviewing The Seattle Times' findings.  Johnson added that the state Medical Commission, which handles issues involving specific doctors, was in the process of investigating complaints

---

[17] *E.g., Seattle Times Investigative Journalism Fund: DONATE*: the "Quantity of Care series . . . led to state and federal investigations, . . . [and] suspension of a surgeon's medical license . . . ." Dkt. 220-3, p.2-5; Seattle Times Application, *Innovative Storytelling Award*, p. 3 (Oct. 2, 2017) ("The package produced swift and sweeping impact. One week after publication, the state Department of Health launched an investigation. . . . Within three weeks, Talia's surgeon resigned.") Dkt. 220-4, p. 4; *see also* Dkt. 220-5, p. 3 (same for Goldsmith award); Dkt. 220-6, p. 13 (same in end of year summary); Dkt. 220-7, p. 4 (same for contest entry).

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 14
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

filed against Dr. Johnny Delashaw.

Delashaw, the chair of neurosurgery at Cherry Hill's Swedish Neuroscience Institute (SNI), was featured prominently in the Times investigation. Johnson said the Medical Commission's investigation of Delashaw was related to two complaints filed in the past year, but he declined to elaborate.

. . .

After seeing The Times report on Cherry Hill's practices, Washington state Sen. Karen Keiser sent a letter earlier this week urging the DOH to "reopen its investigation and vigorously pursue all significant allegations and evidence."[18]

The editorial that the Times now asks the Court to exclude draws many of the same connections. It describes the "[e]xtremely troubling details of practices at Seattle's Swedish Cherry Hill hospital's neuroscience unit," including "suffer[ing]" patient care, that "were revealed this week in a Times special investigation, 'Quantity of Care[]'" . . . by reporters Mike Baker and Justin Mayo," and details the resulting public outrage, including legislators pressuring the Department of Health to re-open old investigations of Cherry Hill. But, unlike other articles, this editorial has no pretense of neutrality; it is an unabashed advocacy piece straight from the Times. For this reason, the editorial is particularly probative of the fault and causation elements of Dr. Delashaw's claims and should be admitted.

Before the articles, a DOH investigation had concluded that allegations about SNI were "not substantiated" and an MQAC investigation of Dr. Delashaw had stalled once a panel had determined that the right course of action would be to require an observer in the operating room.[19] Both investigations came violently to life immediately after the Times's articles appeared, as a direct result of pressure from Senator Karen Keiser on the DOH to "re-open [its] closed-after-two-days investigation."[20] The DOH's MQAC capitulated to the public pressure the Times had

---

[18] Dkt. 220-8.

[19] Dkt. 130-11, pp. 10-11; Dkt. 220-2, p. 25 (Delashaw Dep. 707:1-23).

[20] Email K. Keiser-M. Baker (Feb. 12, 2017) (Dkt. 220-10, p. 2); Letter K. Keiser-Sec'y of Health (Feb. 14, 2017) ("Given the significant substantiation reporting by the Seattle Times on Friday . . . .") (Dkt. 220-11, p.2-3).

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 15
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

created, imposing a summary suspension with no investigation, no hearing, and under a standard that required that the physician be an "immediate threat to patient safety" despite Dr. Delashaw having already resigned.[21]  Months later, the DOH investigation prompted by "[t]he Seattle Times . . . article alleg[ing] numerous patient safety concerns regarding the neurosciences program at Swedish" found many of the Times's claims "not substantiated," including that "[a] review of the data for the Swedish Neurosciences Institute from 2012-2017 did not reveal an increase in surgical complications and infections" and "[a] review of hospital deaths for patient[s] undergoing spine and or cranial surgery in 2014 and 2015 did not reveal a pattern or trend."[22]

### H. Motion H: In re *Evidence About CHARS and Other Data.* and Motion I: In re *Data Reporter Justin Mayo.*

Mr. Mayo is one of two credited authors of *The O.R. Factory*.  While Mr. Baker was the driving force behind the *Quantity of Care* series and the author of its profits over patient care narrative, Mr. Mayo had unique access to Mr. Baker's reporting process and the development of the Articles.  From this position, Mr. Mayo has knowledge of what questions Mr. Baker was investigating, what information he gathered regarding those questions, and what of that information he chose to privilege (versus what he discarded).  Mr. Baker may testify to some of these topics, but there is no basis for limiting Dr. Delashaw's case, and the jury's consideration, to testimony from a single, adverse witness.

Mr. Mayo also is uniquely qualified to testify about the data that the Times reviewed in advance of publishing the Articles (the overwhelming majority of which was the CHARS data).  In particular, Mr. Mayo can describe what data points relevant to patient care at SNI the Times considered.  When this evidence is contrasted with the skewed data points that the Times published for public consumption, the Times's intent in crafting their narrative just so—including giving

---

[21] Dkt. 191-1, p. 63 (Ex Parte Order dated May 5, 2017); Dkt. 191-1, p. 13 ¶ 12 (resignation effective Mar. 1, 2017).
[22] Dkt. 130-9, pp. 10-11 ¶ 4, 9.

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 16
(Case No. 18-cv-00537-JLR)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

readers the false impression that Dr. Delashaw was financially incentivized to perform more and more surgeries—becomes clear.

This evidence is relevant to Mr. Baker's mental state, which is probative of the Times's culpability for publishing false statements about Dr. Delashaw, and to causation, specifically whether the destruction of Dr. Delashaw's career was a foreseeable consequence of this reporting process, and should be admitted.

**I.     Motion I: In re *Data Reporter Justin Mayo*.**

*See supra* pp. 16-17 (section H.).

**J.     Motion J: In re *Connection Between the Seattle Times and the MQAC Licensing Proceeding*.**

*See supra* pp. 13-14 (section G.).

**K.     Motion K: In re *Cumulative Evidence*.**

Dr. Delashaw has the burden of proof and persuasion for every element of his claims, and he should be afforded at least as much time to prove those claims as the relevant defendant has to attack them.  As the Times recognizes, Dr. Delashaw's remaining claims against the Times and Dr. Cobbs are "completely distinct."  So that Dr. Delashaw has adequate/equal time to prove his claims against each defendant, the Court should reserve half of the evidentiary portion of trial for Dr. Delashaw and provide each defendant half that amount of time to defend against their half of Dr. Delashaw's claims.

Apart from allocating trial time, the Court should reject the Times's request to closely dictate how Dr. Delashaw presents his case.  The only concern that that Times offers to justify its further request that the Court preemptively limit the number of witnesses that Dr. Delashaw is permitted to call at trial is that his presentation will "impinge on Defendants' ability to put on their cases," or else make it "impossible" for them to do so.  This concern is addressed by an equitable division of the trial time.

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 17
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

The Times anticipates that Dr. Delashaw will present cumulative evidence simply because he listed several witnesses that share general basis of relevant knowledge.  There is no basis for the Court to reach this conclusion long before Dr. Delashaw has the opportunity to present his first piece of evidence.  *See Hines*, 926 F.2d at 274.  Moreover, as the Times is aware from its participation in depositions of several of these witnesses, each person has a unique knowledge set even if their testimony is expected to pertain to the same general topics.  Furthermore, one of Dr. Delashaw's claims against Dr. Cobbs at trial will be that he falsely stated that SNI neurosurgeons were unanimous in their opposition to Dr. Delashaw.  If he so chooses, Dr. Delashaw should be permitted to prove that Dr. Cobbs's statements to this effect were (1) false and (2) consequential with testimony from multiple SNI neurosurgeons.

### III.   CONCLUSION

The Court should deny the Seattle Times' motions in limine.

DATED this 3rd day of August, 2020.

HARRIGAN LEYH FARMER & THOMSEN LLP

By: *s/ Arthur W. Harrigan, Jr.*
By: *s/ Tyler L. Farmer*
By: *s/ Kristin E. Ballinger*
By: *s/ Caitlin B. Pratt*
  Arthur W. Harrigan, Jr., WSBA #1751
  Tyler L. Farmer, WSBA #39912
  Kristin E. Ballinger, WSBA #28253
  Caitlin B. Pratt, WSBA #48422
  999 Third Avenue, Suite 4400
  Seattle, WA 98104
  Tel:  (206) 623-1700
  Fax:  (206) 623-8717
  Email: arthurh@harriganleyh.com
  Email: tylerf@harriganleyh.com
  Email: kristinb@harriganleyh.com
  Email: caitlinp@harriganleyh.com

  *Attorneys for Johnny B. Delashaw, Jr.*

DR. DELASHAW'S OPPOSITION TO THE
SEATTLE TIMES' MOTIONS IN LIMINE - 18
(Case No. 18-cv-00537-JLR)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717