UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHNNY DELASHAW, JR.,

Plaintiff,

v.

SEATTLE TIMES COMPANY, et al.,

Defendants.

CASE NO. C18-0537JLR

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SEATTLE TIMES' MOTION TO EXCLUDE EXPERT OPINIONS

## I. INTRODUCTION

This matter comes before the court on Defendant Seattle Times Company's ("the Seattle Times" or "the Times") motion to exclude the expert opinion of Plaintiff Johnny Delashaw, Jr.'s experts Neil Beaton and Mauri Moore. (Mot. (Dkt. # 190).) Defendant Charles Cobbs seeks to join the motion to exclude Neil Benton. (Notice of Joinder (Dkt. # 203).) Dr. Delashaw opposes both the motion and Dr. Cobbs's proposed joinder of the motion. (Resp. (Dkt. # 219); Resp. to Joinder (Dkt. # 215).) Having considered the

submissions of the parties and the relevant law, the court GRANTS in part and DENIES in part the Seattle Times' motion to exclude the expert opinions of Mr. Beaton and Ms. Moore.

## II. BACKGROUND

On April 11, 2018, Dr. Delashaw filed suit against the Times and Dr. Cobbs. (*See* Compl. (Dkt. # 1).) Against the Times, Dr. Delashaw brings claims of defamation, defamation by implication, and tortious interference with a business expectancy. (Am. Compl. (Dkt. # 25) ¶¶ 164-185.) Dr. Delashaw's claims against the Seattle Times center on a series of articles entitled *Quantity of Care* ("the Articles") that the Times published on February 12, 2017, about the practices of Dr. Delashaw's employer, the Swedish Neurological Institute. (*Id*. ¶¶ 99-163.) Against Dr. Cobbs, Dr. Delashaw brings claims of defamation, tortious interference with a business expectancy, and civil conspiracy. (*Id.* ¶¶ 190-208.) On June 11, 2020, the court granted in part and denied in part the Seattle Times and Dr. Cobbs's respective motions for summary judgment. (*See* 6/11/20 Order (Dkt ## 160 (sealed); 207 (redacted)).) Dr. Delashaw's only remaining claims against the Seattle Times are the portions of his defamation and tortious interference claims that rely on statements about Dr. Delashaw's financial incentives to pursue a high patient volume. (*Id*.)

The court initially ordered disclosure of expert testimony by June 5, 2019. (Initial Scheduling Order (Dkt. # 32).) The court later extended this deadline by nine months to March 4, 2020. (Am. Scheduling Order (Dkt. # 90).) On March 4, 2020, Dr. Delashaw disclosed four experts, including Mr. Beaton as a damages expert and R. Thomas Berner

as an expert in journalism. (Wion Decl. (Dkt. # 191) ¶ 2, Ex. 1.) Ms. Moore was not included in this disclosure. (*See id*.) On March 6, 2020 Dr. Delashaw served a report authored by journalism experts Julie Blacklow and Ms. Moore. (Wion Decl. ¶ 11, Ex. 10 ("March 6th Report").) On April 23, 2020, Dr. Delashaw provided Defendants with an additional report authored by Ms. Blacklow and Ms. Moore. (*Id.* ¶ 12, Ex. 11 ("April 23rd Report").) Mr. Berner and Ms. Blacklow were later withdrawn as experts, and Dr. Delashaw represented that he would not attempt to introduce the portions of the April 23rd Report that were solely authored by Ms. Blacklow. (Wion Decl. ¶¶ 17-18.)

## III. ANALYSIS

### A. Legal Standard

"Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Federal Rule of Evidence 702."[1] *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). "Relevancy simply requires that 'the evidence logically advance a

---

[1] Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

material aspect of the party's case.'" *Id.* (citing *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (citation and internal alterations omitted)). Reliability "requires that the expert's testimony have 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).

Rule 26(a)(2)(B)(i) requires that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness a required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c) "gives teeth to [the requirement of Rule 26(a)] by forbidding the use at trial of the information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The burden of proof is on the party seeking to avoid the Rule 37 sanction. *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008) (citing *Yeti by Molly*, 259 F.3d at 1107) ("Implicit in Rule 37(c) is that the burden is on the party facing sanctions to prove harmlessness.").

**B. Mr. Beaton's Expert Testimony**

Mr. Beaton is offered as an expert to calculate alleged damages in the form of lost earnings. (*See* Resp. at 1; Wion Decl. ¶ 2; Ex. 1 ("Beaton Report").) He states in his report that he has based his opinions on the assumption that "the allegations made against the [Seattle] Times and Dr. Cobbs will be adjudicated in Dr. Delashaw's favor." (Beaton

Report at 9.) Mr. Beaton also avers that he does not and will not express "an opinion on the legal merits of Dr. Delashaw's claim." (*Id.*)

Defendants argue that since Mr. Beaton does not offer an opinion on a causal link between Defendants' actions and his calculated damages, his opinion is conclusory and not based on sufficient facts and data.[2] (Mot. at 12-13 (citing *Nuveen Quality Income Mun. Fund Inc. v. Prudential Equity Grp., LLC*, 262 Fed. Appx. 822, 824 (9th Cir. 2008).) Defendants point to a defamation case where the Ninth Circuit reversed and remanded after finding that a damages expert's opinion on lost earnings was based on "impermissible conjectural assumptions that were not supported by any actual evidence." (Mot. at 13 (citing *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 474-76 (9th Cir. 1977)).) In *Maheu*, however, the expert's analysis involved an assumption that the plaintiff, currently making $40,000 a year, could earn at least $300,000 despite no evidence to support this assumption beyond "sheer fantasy." 569 F.2d at 475-76. Here, Defendants raise no concerns over the validity of Mr. Beaton's economic assumptions or methods when calculating Dr. Delashaw's alleged lost wages. (*See* Mot. at 12-14.) Dr. Delashaw offers Mr. Beaton for his expertise in this type of economic analysis, not any expertise in what

---

[2] Dr. Cobbs submitted a notice of joinder of the Seattle Times' motion as it relates to Mr. Beaton. (*See* Notice of Joinder.) Dr. Cobbs asserts that "[j]ust as Mr. Beaton fails to offer any connection between the single allegedly false portion of the Times' article relating to Dr. Delashaw's compensation and the alleged lost income damages he analyzes, he likewise does not establish any connection between the allegedly false portions of Dr. Cobbs's statements and the alleged damages." Dr. Delashaw opposes joinder. (*See* Resp. to Joinder.) Although the court allows Dr. Cobbs to join the Seattle Times' motion, Dr. Cobbs's argument regarding Mr. Beaton's assumption of causation fails for the same reason as the Seattle Times' argument, which the court discusses in more detail below.

causes a doctor to become unemployable. (*See generally* Beaton Report.) Accordingly, the court will allow Mr. Beaton to testify to his economic analysis regarding lost wages.[3]

Defendants also argue that Mr. Beaton's testimony should be excluded under Rule 403 because it will be confusing to the jury and unfairly prejudicial. (Mot. at 14 (citing Fed. R. Evid. 403).) The court disagrees. Mr. Beaton may testify to lost earnings, and Defendants may attack this testimony based on his underlying assumptions and the facts presented at trial. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (citing *Daubert*, 509 U.S. at 596) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."). The court finds that Mr. Beaton's testimony is both reliable and relevant given the limited subject matter that Dr. Delashaw has represented will comprise his testimony. *See Ruvalcaba-Garcia*, 923 F.3d at 1188. Therefore, the court DENIES Defendants' motion to exclude Mr. Beaton as an expert witness.

**C. Ms. Moore's Expert Testimony**

The Seattle Times moves to exclude Ms. Moore as an expert witness for improper disclosure. The Times argues that both of Ms. Moore's expert reports were untimely and should be excluded under Rule 37. (*See* Mot. at 14); Fed. R. Civ. P. 37(c). The Times

[3] Both parties present arguments regarding the sufficiency of evidence that Dr. Delashaw will present regarding causation. (*See* Mot. at 11-13; Resp. at 6-8.) The court does not find it proper to analyze these arguments at this time, as Dr. Delashaw presented Mr. Beaton as an expert for damages, not causation. Should Mr. Beaton offer attempt to offer testimony regarding causation at trial that Defendants believe is improper, Defendants may raise an objection at that time.

also avers that Ms. Moore's March 6th Report does not satisfy the substantive disclosure requirements of Rule 26. (*See* Mot. at 16); Fed. R. Civ. P. 26(a)(2)(B).[4]

1. <u>The March 6th Report Was Untimely Disclosed and Does Not Meet the Requirements of Rule 26</u>

In order to be proper, disclosure must be timely. Fed. R. Civ. P. 26(a)(2)(D). Dr. Delashaw does not dispute that the March 6th Report, served two days after the disclosure deadline set by the court, was untimely. (Resp. at 8.)

In addition to being timely, proper disclosure requires that "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998). If the report does not contain a sufficient level of detail, exclusion is within the court's discretion. *See id.* at 738 (upholding a district court's exclusion of an expert on the because the disclosed report was conclusory and did not provide a factual basis for its conclusions); *see also Torgerson v. Leavit*, No. C11-0900RAJ, 2013 WL 12066142, at *1 (W.D. Wash. May 29, 2013) (excluding an expert witness whose report was incomplete and provided a mere summary of the expert's opinions devoid of supporting facts or data).

Ms. Moore and Ms. Blacklow's March 6th Report can only generously be described as threadbare. It contains two pages of substance—a half-page "Background"

[4] The Times also offers vague and incomplete arguments that the March 6th Report is not relevant and should be excluded under Rule 402 and that it is an improper expert opinion under Rule 702. (Mot. at 16); Fed. R. Evid. 402, 702. Since the court finds that the reports were improperly disclosed and should be excluded, it does not address these arguments.

section that outlines the materials reviewed, and a one-and-a-half page "Summary of Opinions" section that outlines deficiencies identified in their review. (*See* March 6th Report.) These identified deficiencies are vague, conclusory, and unsupported by details. For example, the report states that "some of the particular word choices and charges leveled against Dr. Delashaw were both unnecessary and inflammatory." (March 6th Report at 1.) Yet the report does not identify any word choices or charges that meet these criteria, nor does it explain what would qualify as either unnecessary or inflammatory. (*See generally id.*) The report also claims that the reporter omitted "diametrically opposed information provided to the reporter" from the Articles. (*Id.* at 1.) The report does not identify, however, any information that was provided to the reporter that should have been included in the Articles.[5] (*See generally id.*) The same is true for the report's vague conclusion that the Articles "seemed to . . . leave out elements that might have supported or helped Dr. Delashaw." (*See id.* at 2.) Further, nothing in the March 6th Report mentions statements in the Articles regarding Dr. Delashaw's financial incentives to pursue a higher patient volume, the only category of allegedly defamatory statements that survived the Times' first motion for summary judgment. (*See generally* March 6th Report; 6/11/20 Order.)

The March 6th Report does not contain the necessary "how" and "why" of how Ms. Moore reached her result. *See Salgado by Salgado*, 150 F.3d 742 n.6. Therefore, it

[5] When Ms. Moore was asked about this in her deposition, she responded that she did not recall what improperly omitted information she had access to before she drafted the March 6th Report. (Wion Decl. ¶ 14, Ex. 13 ("Moore Deposition") at 198:2-199:8.)

does not comply with the requirements of Rule 26 to present "a complete statement of all opinions the witness will express and the basis and reasons for them." *See* Fed. R. Civ. P. Rule 26(a)(2)(B)(i). Accordingly, the March 6th Report was improperly disclosed under Rule 26.

2. The April 23rd Report Was Untimely

The April 23rd Report is far more substantial than the March 6th Report. Labelled "Expert Report"— the document is 37 pages long and contains notes from Ms. Moore and Ms. Blacklow, 18 pages of analysis, and a two-page summary. (*See generally* April 23rd Report.) Notably, the two-page summary of the April 23rd Report is longer than the substance of the March 6th Report. (*Compare* April 23rd Report *with* March 6th Report.) The document, however, was served seven weeks after the expert disclosure deadline, 11 days before the deadline for the Seattle Times' expert rebuttal report, and five days before Ms. Moore's deposition. (*See* Wion Decl. ¶ 12.) Dr. Delashaw does not argue that the report was timely. (*See* Resp. at 10-11.)

3. Improper Disclosure of Both Reports Was Neither Substantially Justified nor Harmless

Dr. Delashaw does not contend that Ms. Moore's reports were properly disclosed, but instead argues that sanctions are not warranted under Rule 37 because there was good cause for the improper disclosures, they were substantially justified, and they were harmless. (Resp. at 9-10.)

In support of substantial justification and good cause, Dr. Delashaw points to the COVID-19 pandemic and health concerns for his previously retained journalism expert,

Mr. Berner. (Resp. at 10.) Dr. Delashaw represents that Mr. Berner's physician advised him against travel "because his medical condition placed him within the parameters of what is considered a high-risk population for potentially life-threatening complications from COVD-19." (Farmer Decl. (Dkt. # 220) ¶ 6.) The Times responds that Dr. Delashaw first raised the COVID-19 justification for Ms. Moore's untimely expert reports in Dr. Delashaw's opposition to their motion to exclude, and was otherwise silent on this issue. (*See* Reply (Dkt. # 229) at 7.) Dr. Delashaw's counsel's prior communications with the Times support this contention. Dr. Delashaw's counsel did not mention the COVID-19 pandemic or Dr. Berner's health in their request for an extension of the expert deadline. (*See* Farmer Decl. ¶ 5, Ex. 1 (requesting an extension of the expert disclosure deadline on March 3 at 8:14 PM "[d]ue to the press of our schedule in this and other matters").)[6] There does not appear to have been any communication regarding COVID-19's impact on expert disclosures between the March 3 request for an extension and the disclosure of the March 6th Report. (*See generally* Farmed Decl.; Wion Decl.; Resp.)

The same is true for the period between the disclosures of the March 6th Report and the April 23rd Report. (*See generally id*.) When the parties filed a stipulation requesting extension of various deadlines on March 26, 2020 based on the COVID-19 pandemic, there was no mention of extending the expert disclosure deadline or

[6] The court notes that even if the Times had consented to an extension, deadlines in the court's scheduling order "are firm dates that can be changed only by order of the court, not by agreement of counsel or parties." (Am. Scheduling Order at 3.)

substituting journalism experts based on any risk the pandemic created for Mr. Berner. (*See generally* Stipulation and [Proposed] Order Extending Certain Deadlines (Dkt. # 146).) Instead, one month after the March 26, 2020 request for an extension, Dr. Delashaw served the April 23rd Report with no warning to opposing counsel. (*See* Reply at 7.) While the April 23rd Report provides far more detail than the incomplete March 6th Report about how Ms. Moore and Ms. Blacklow reached their conclusions, it was served seven weeks after the March 4 expert disclosure deadline. Even if the court credited Dr. Delashaw's after-the-fact justifications related to the COVID-19 pandemic and Dr. Berner's health, he has offered no justification for why it took an additional seven weeks to disclose what is, in essence, the actual expert report. (*See generally* Resp. 9-17.)[7] Accordingly, Dr. Delashaw has not met his burden of demonstrating that his improper disclosure was sufficiently justified or a result of good cause.

Under Rule 37, harm can result from prejudice or surprise to the party against whom the improperly disclosed evidence is offered. *See Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010); Fed. R. Civ. P. 37(c)(1). In support of harmlessness, Dr. Delashaw contends that the late disclosure of the reports has not

[7] The court also notes that it has repeatedly admonished counsel that adherence to the district's local rules and the Federal Rules of Civil Procedure is not discretionary. (8/31/2018 Order (Dkt # 41) (denying a stipulation and proposed order from the parties because it did not comply with the Local Rules); 5/28/2020 Order (Dkt. # 155) at 11-12 ("The court warns Dr. Delashaw and his counsel that it expects all parties to diligently adhere to this district's local rules and that additional attempts to flout the local rules may result in sanctions."); 6/11/20 MSJ Order (Dkt. ## 160 (sealed); 207 (redacted)) (repeating the admonishment of the 5/28/2020 Order); 6/22/20 Order (Dkt. # 179) at 7 ("[T]he court cautions the parties that it will not tolerate any further flouting of this case's deadlines."); 6/22/20 Order at 7 (admonishing counsel for not behaving with professionalism in the discovery process).)

meaningfully altered the Seattle Times' ability to prepare for trial, the Seattle Times deposed Ms. Moore for seven hours after the disclosure of both reports, and the Seattle Times produced its rebuttal expert report in a timely fashion. (Resp. at 11-12.) However, pointing to the Seattle Times' appropriate compliance despite Dr. Delashaw's noncompliance with the court's deadlines does not mandate a finding of harmlessness. While the Times did depose Ms. Moore five days after Dr. Delashaw served the April 23rd Report, they asked very few questions about the April 23rd Report, and none dealt with the substance of the report's contents. (*See* Moore Deposition at 271:2-278:5; *see also* Reply at 8-9 (noting that the Times did not have an opportunity to digest or analyze the April 23rd Report with their own journalism expert before Ms. Moore's deposition).) The Times' rebuttal journalism expert also stated that because the April 23rd report went "far beyond issues originally addressed" in the March 6th Report, she "did not have a reasonable opportunity to respond to the myriad new opinions expressed" in the April 23rd Report before the May 4, 2020 deadline for rebuttal reports. (Upton Decl. (Dkt. # 192) ¶ 4.) This was compounded by the fact that, despite Dr. Delashaw's counsel's alleged concerns over Mr. Berner's health, Mr. Berner was not withdrawn as an expert before the May 4 expert rebuttal deadline. (*See* Upton Decl. ¶ 3, Ex. A at 1 (noting that Ms. Upton's rebuttal report responded to Mr. Berner's expert report, but Ms. Upton did not have sufficient time to rebut the April 23rd Report).) The prejudice of Dr. Delashaw's long-delayed disclosure is all the more apparent because the April 23rd Report was the only report that mentioned Dr. Delashaw's financial incentives—the only remaining category of allegedly defamatory statements at issue in the Articles. (*See*

March 6th Report; April 23rd Report; Reply at 7.) Dr. Delashaw has not met his burden of demonstrating harmlessness.

Dr. Delashaw served an incomplete and untimely report as a placeholder so that he could later serve a more developed, even more untimely report. Dr. Delashaw has failed to meet his burden of showing that this course of action was either substantially justified or harmless. The court GRANTS the Seattle Times' motion to exclude Ms. Moore as an expert witness. Because the court is excluding Ms. Moore under the discretion afforded to it by Rules 26 and 37 to ensure an orderly trial and prevent unfair prejudice to the parties, the court does not analyze the questions of reliability and relevance for Ms. Moore's testimony.

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS in part and DENIES in part the Seattle Times' motion to exclude the expert opinions of Mr. Beaton and Ms. Moore. (Dkt. # 190). The court DENIES the motion as it relates to Mr. Beaton and GRANTS the motion as it relates to Ms. Moore.

Dated this 30th day of October, 2020.

JAMES L. ROBART
United States District Judge