1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

JOHNNY DELASHAW, JR.,

CASE NO. C18-0537JLR

11

Plaintiff,

12

v.

13

SEATTLE TIMES COMPANY, et al.,

14

Defendants.

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT CHARLES
COBBS'S SECOND MOTION
FOR SUMMARY JUDGMENT

15

## I.  INTRODUCTION

16
17

Before the court is a portion of Defendant Charles Cobbs's second motion for

18

summary judgment.  (*See* Cobbs 2d MSJ (Dkt. ## 185 (redacted); 188 (sealed)).)

Plaintiff Johnny Delashaw, Jr., opposes Dr. Cobbs's motion.  (Cobbs 2d MSJ Resp. (Dkt.

19

# 242).)  At the direction of the court, the parties filed supplemental briefs to address the

20

question of Dr. Cobbs's possible immunity from damages under the Healthcare Quality

21

Improvement Act ("HCQIA" or "the Act"), 42 U.S.C. § 11111(a).  (*See* Cobbs Suppl. Br.

22

1    (Dkt. # 289); Delashaw Suppl. Br. (Dkt. # 290).)  Dr. Cobbs subsequently filed a motion

2    to strike portions of Dr. Delashaw's supplemental brief.  (Cobbs Surreply (Dkt. # 296).)

3    The court has considered the motions, the parties' submissions in support of and in

4    opposition to the motions, and the applicable law.  Being fully advised,[1] the court

5    GRANTS in part and DENIES in part Dr. Cobbs's motion to strike.  It further GRANTS

6    in part and DENIES in part the remaining portion of Dr. Cobbs's second summary

7    judgment motion.

8                                    **II.    BACKGROUND**

9            The court has discussed the procedural and factual backgrounds of this case in

10   detail in its prior orders on motions for summary judgment.  (*See* 6/11/20 MSJ Order

11   (Dkt. ## 160 (sealed); 207 (redacted)) at 2-28; 12/11/20 Am. Order (Dkt. ## 298 (sealed);

12   300 (redacted)) at 2-9.)  Therefore, the court only discusses the facts most relevant to the

13   instant motion below.

14   **A.    Factual Background and Claims Against Dr. Cobbs**

15           Dr. Delashaw is a neurosurgeon who took a position at Swedish Medical Center

16   ("Swedish") in 2013 and remained employed at Swedish's Cherry Hill campus in Seattle,

17   Washington (hereinafter, "Cherry Hill" or "Swedish-Cherry Hill") until 2017.  (3/2/20

18   Delashaw Decl. (Dkt. # 126) ¶ 2.)  In early 2015, he was promoted to Chairman of

19   Neurosurgery and Spine at the Swedish Neuroscience Institute ("SNI").  (*Id.*)

20

21           [1] Neither party requests oral argument (*see* Cobbs 2d MSJ at 1; Cobbs 2d MSJ Resp. at 1;
     Cobbs Suppl. Br. at 1; Delashaw Suppl. Br. at 1), and the court finds oral argument unnecessary
22   to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

1    On December 20, 2016, Swedish CEO Anthony Armada informed Dr. Delashaw

2   that Swedish had "documented repeated and numerous complaints about your

3   leadership," and despite Swedish's efforts to counsel and support Dr. Delashaw, Swedish

4   "continue[s] to hear the concerns and the concerns are growing." (*See* 2/6/20 Goldman

5   Decl. (Dkt. # 108) ¶ 5, Ex. 3 at JDEL_027310.) Mr. Armada notified Dr. Delashaw that

6   Swedish could no longer keep him as Chair of Neurosurgery and would instead move

7   him into an administrative role as "Chair Emeritus of Neurosurgery at SNI." (*See id.*) In

8   this new position, Dr. Delashaw would continue to focus on his clinical practice, lead

9   SNI's philanthropic efforts, and help recruit neurosurgeons to Swedish. (*See id.*)

10  However, effective immediately, Swedish planned to transition the management of the

11  neurosurgery practice at SNI to an interim Chair of Neurosurgery. (*See id.*)

12    The instant motion is centered around a letter (the "Letter") that Dr. Cobbs

13  originally sent on November 4, 2016, to Mr. Armada, Rod Hochman, and June Alataras

14  regarding Dr. Delashaw via email. (*See* 3/16/20 Pratt Decl. (Dkt. # 141) ¶ 19, Ex. 21

15  ("November 2016 Letter"); Am. Compl. (Dkt. # 25-1) ¶¶ 73-78.) Over the next few

16  weeks after sending the letter, Dr. Cobbs distributed it to several other individuals. On

17  November 5, 2016, Dr. Cobbs sent a copy of the November 2016 Letter to his fellow SNI

18  surgeons Drs. Ryder Gwinn, Stephen Monteith, and Akshal Patel, as well as to a man

19  named Michael Vatis, who does not appear to work at Swedish. (*See* 3/16/20 Pratt Decl.

20  ¶¶ 20, 33, Exs. 22, 39.) On November 7, 2016, Dr. Cobbs also emailed the Letter to Dr.

21  David Newell, who did not work at Swedish at that time. (*See id.* ¶ 33, Ex. 39.) On

22  November 8, 2016, he sent the Letter to Swedish Medical Group's ("SMG") CEO, Dr.

ORDER - 3

1   Ralph Pascualy.  (7/27/20 Pratt Decl. (Dkt. # 243) ¶ 26, Ex. 25.)   On November 17,

2   2016, Dr. Cobbs emailed the November 2016 Letter to Dr. Peggy Hutchinson (the

3   "Hutchinson Email") and cc'd a group of individuals that he allegedly believed were part

4   of Swedish's Medical Executive Committee ("MEC").  (*See* 3/16/20 Pratt Decl. *¶* 22, Ex.

5   24 ("Hutchinson Email"); 7/27/20 Pratt Decl. ¶ 23, Ex. 22 ("Pascualy Texts") at 10-12

6   (text message conversation between Dr. Cobbs and Dr. Pascualy discussing plan to send

7   Letter to MEC); (Cobbs 2d MSJ Reply (Dkt. ## 247 (redacted); 250 (sealed)).)

8        The November 2016 Letter outlined several concerns allegedly raised by

9   physicians, nurses, and staff about Dr. Delashaw that fell into the following categories:

10  (i) a pattern of intimidation, harassment, and retaliation; (ii) discouraging the reporting of

11  errors; (iii) discouraging staff from asking questions; (iv) contributing to the loss of

12  experienced personnel; (v) jeopardizing patient safety with disruptive behavior; and (vi)

13  interfering with other physicians' referrals and practices.  (*See* 2/27/20 Baer Decl. (Dkt.

14  # 117) ¶ 3, Ex. 26.)  Although Dr. Cobbs was the only signatory to the November 2016

15  Letter, he received input from multiple Swedish surgeons on its content.  (*See id.* ¶ 3,

16  Exs. 27-33.)  Dr. Cobbs testified that he omitted the names of the other surgeons from his

17  Letter because he believed that those surgeons were afraid of retaliation from Dr.

18  Delashaw.  (*See id.* ¶ 3, Ex. 25 ("Cobbs Dep.") at 192:19-193:5.)  Dr. Delashaw alleges

19  that Dr. Cobbs's statements resulted in "extreme reputational harm and loss of

20  employment opportunities."  (Am. Compl. ¶ 196.)

21       Dr. Delashaw also brings claims of civil conspiracy and tortious interference with

22  a business expectancy against Dr. Cobbs.  (*Id.* ¶¶ 197-208.)  Dr. Delashaw's civil

1    conspiracy claims arise out of Dr. Cobbs allegedly working with Dr. Marc Mayberg and

2    others to harm Dr. Delashaw's career and reputation.  (*Id*. ¶ 205.)  While Dr. Delashaw is

3    not entirely clear on what conduct was a part of this alleged conspiracy and how it was

4    unlawful, his claim encompasses some allegedly defamatory statements made in the

5    November 2016 Letter.  (*See id*. ¶ 206 (claiming that Dr. Cobbs and his conspirators

6    "[d]evis[ed] false complaints to pressure SNI management into taking action against Dr.

7    Delashaw and falsely representing to management that complaints were 'unanimous'

8    views of SNI's faculty").)  Dr. Delashaw's tortious interference claim alleges that Dr.

9    Cobbs interfered with Dr. Delashaw's business relationship with Swedish "through

10   improper means, including defamation and Dr. Cobbs's violation of his obligations to

11   Swedish."  (*Id*. ¶¶ 198-201.)

12   **B.    Procedural History**

13          On November 18, 2020, the court granted in part and denied in part Dr. Cobbs's

14   second motion for summary judgment.  (*See* 11/18/20 Order (Dkt. # 285 (sealed));

15   12/11/20 Am. Order.)  In his second motion for summary judgment, Dr. Cobbs argued

16   that he was immune under the HCQIA from damages for any defamatory statements

17   made in the November 2016 Letter.  (Cobbs 2d MSJ at 16-19.)  The court found that both

18   Dr. Cobbs's arguments regarding HCQIA immunity (*id*.) and Dr. Delashaw's response

19   (Cobbs 2d MSJ Resp. at 9-12) were lacking and ordered the parties to file supplemental

20   briefs.  (*See* 12/11/20 Am. Order at 23.)  Specifically, the court ordered the parties to file

21   supplemental briefing "on the question of whether, and to what extent, the HCQIA

22   provides immunity to liability stemming from Dr. Cobbs's statements in the November

ORDER - 5

1  2016 Letter." (*Id.*)  After the parties filed their supplemental briefing, Dr. Cobbs moved

2  to strike portions of Dr. Delashaw's supplemental briefing.  (Cobbs Surreply.)

3  ### III.    ANALYSIS

4  The court first lays out the applicable legal standard before turning to Dr. Cobbs's

5  motion to strike and the parties' substantive arguments.

6  ### A.    Legal Standard

7  Summary judgment is appropriate if the evidence viewed in the light most

8  favorable to the non-moving party shows "that there is no genuine dispute as to any

9  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

10  56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*,

11  816 F.3d 1170, 1177 (9th Cir. 2016).  A fact is "material" if it might affect the outcome

12  of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute

13  is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the

14  non-moving party."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)

15  (citing *Anderson*, 477 U.S. at 248-49).

16  The moving party bears the initial burden of showing there is no genuine dispute

17  of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at

18  323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can

19  show the absence of such a dispute in two ways:  (1) by producing evidence negating an

20  essential element of the nonmoving party's case, or (2) by showing that the nonmoving

21  party lacks evidence of an essential element of its claim or defense.  *Nissan Fire &*

22  *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party

1   meets its burden of production, the burden then shifts to the nonmoving party to identify

2   specific facts from which a factfinder could reasonably find in the nonmoving party's

3   favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

4   **B.    Motion to Strike**

5          Dr. Cobbs brings a motion to strike two portions of Dr. Delashaw's supplemental

6   briefing.  (Cobbs Surreply.)  Specifically, Dr. Cobbs seeks to strike (1) any arguments

7   addressing liability for republication; and (2) Dr. Delashaw's filing of a declaration that

8   included one email from Dr. Cobbs.  (Cobbs Surreply at 2-3 (moving to strike portions of

9   Delashaw Suppl Br. and 11/30/20 Farmer Decl. (Dkt. # 291) ("MEC Email")).)  The court

10  agrees that the first category of material is outside the scope of the court's requested

11  supplemental briefing.  Dr. Delashaw presents arguments about liability for republication

12  of the November 2016 Letter.  (Delashaw Suppl. Br. § 1.C at 5-6.)  This is beyond the

13  scope of the court's narrow directive to file supplemental briefing regarding HCQIA

14  immunity (*see* 12/11/20 Am. Order at 23), and as such, the court will not consider it at

15  this time.

16         The court will, however, consider the evidence included in the 11/30/20 Farmer

17  Declaration, as it is relevant to the question at hand.  When ordering the parties to provide

18  additional briefing, the court instructed the parties to present arguments regarding

19  "whether, and to what extent, the HCQIA provides immunity to liability stemming from

20  Dr. Cobbs's statements in the November 2016 Letter."  (*Id.* at 23.)  Dr. Delashaw has

21  done just that by bringing the court's attention to an email, authored by Dr. Cobbs, that

22  provides evidence of Dr. Cobbs's intended audience when distributing the November

1   2016 Letter.  (*See* 11/30/20 Farmer Decl. (Dkt. # 291).)This is in line with the court's

2   request and goes directly to the potential applicability of the statute Dr. Cobbs seeks to

3   invoke.  (*See infra* § III.C.)  Dr. Cobbs filed a motion for summary judgment raising the

4   issue of HCQIA liability, as well as a reply and supplemental briefing addressing the

5   same.  (*See generally* Cobbs 2d MSJ; Cobbs 2d MSJ Reply; Cobbs Suppl. Br.)  The court

6   will not turn a blind eye to relevant evidence because Dr. Cobbs claims he has been

7   ambushed despite having three opportunities to provide the court with his own evidence.

8   The court also will not allow Dr. Cobbs a fourth opportunity to submit evidence.[2]

9        Thus, the court grants in part and denies in part Dr. Cobb's motion to strike.  The

10  court will not consider Dr. Delashaw's arguments regarding liability for republication at

11  this time.  The court will, however, consider the declaration that Dr. Delashaw submitted

12  in support of his arguments in the supplemental briefing.

13  **C.    Applicability of the HCQIA**

14       Dr. Cobbs contends that he enjoys immunity from damages for any statements

15  made in the November 2016 Letter under the HCQIA and thus should be granted

16  summary judgment on all claims.  (Cobbs Suppl. Br. at 1.)   The court finds that while

17  some immunity from damages may exist, it is not absolute.  The court first lays out the

18

19       [2] To the extent Dr. Cobbs's motion to strike is based on a lack of parity between the
20  length of the arguments the parties were able to raise in their supplemental briefs, the court finds
    this argument to be unfounded.  The court ordered the parties to submit six pages of additional
21  briefing.  (12/11/20 Am. Order at 23.)  Dr. Delashaw provided six pages of double-spaced
    briefing, while Dr. Cobbs provided six pages of single-spaced briefing.  (*Compare* Delashaw
    Suppl. Br., *with* Cobbs Suppl. Br.)  The court sees no imbalance in considering Dr. Delashaw's
22  three-page declaration under these circumstances.

1  relevant portions of the Act before analyzing what damages Dr. Cobbs may be immune

2  from and how Dr. Delashaw may overcome this presumption of immunity.

3        1.  <u>Relevant Portions of the HCQIA</u>

4        The applicability of the HCQIA turns on whether the recipients of Dr. Cobbs's

5  Letter were members of a professional review body, as defined under the Act.  The

6  relevant portion of the HCQIA states that:

7        Notwithstanding any other provision of law, no person . . . providing
         information to a professional review body regarding the competence or
8        professional conduct of a physician shall be held, by reason of having
         provided such information, to be liable in damages under any law of the
9        United States or of any State . . . unless such information is false and the
         person providing it knew that such information was false.

10 42 U.S.C. § 11111(a)(2).  The Act defines a "professional review body" as

11

12       . . . [A] health care entity and the governing body or any committee of a
         health care entity which conducts professional review activity, and includes
         any committee of the medical staff of such an entity when assisting the
13       governing body in a professional review activity.

14 42 U.S.C. § 11151(11).  The Act further defines a health care entity to include "a hospital

15 that is licensed to provide health care services by the State in which it is located."  42.

16 U.S.C. § 11151(4)(A).

17       At the outset, the court finds that the plain meaning of the Act demonstrates that

18 Dr. Cobbs's assertion that the HCQIA entitles him to summary judgment on all claims is

19 overbroad.  The Act only provides immunity from liability for damages.  42 U.S.C.

20 § 11111(a)(2).  Dr. Delashaw seeks both damages and equitable relief from Dr. Cobbs.

21 (Am. Compl. Prayer for Relief ¶ 2 (seeking an order "enjoining Dr. Cobbs from making

22

1    false statements about Dr. Delashaw").)  Thus, even if Dr. Cobbs is immune for all

2    damages under the HCQIA, it would not dispose of all Dr. Delashaw's claims.

3              2.   Recipients of the November 2016 Letter

4              Turnning to the question of damages, the court does not find that Dr. Cobbs is

5    immune for all potential damages—only those tied to specific recipients of the Letter that

6    constitute members of a professional review body.  Dr. Delashaw argues that Dr. Cobbs

7    cannot establish that all the recipients constitute a member of a "professional review

8    body" as defined by the HCQIA.[3]  (Cobbs MSJ Resp. at 10-12; Delashaw Suppl. Br. at

9    1-4.)  Dr. Cobbs argues that the HCQIA provides immunity because the Swedish

10   recipients fall into two categories.  First, the November 4, 2016, recipients of the

11   November 2016 Letter:  Mr. Armada, Ms. Altaras, and Mr. Hochman, are corporate

12   officers of Swedish and thus "personify the 'health care entity' and its 'governing body.'"

13   (Cobbs Suppl. Br. at 3 (quoting 42 U.S.C.  §§ 11151(4)(A), (11)).)  Second, the

14   November 17 recipients of the Letter—Dr. Hutchinson and other Swedish employees—

15   constitute members of Swedish's MEC, and thus are part of a "professional review

16   body."  (*Id.*; Cobbs 2d MSJ Reply at 8 n.5 (asserting that all recipients of Letter on

17   November 17 were MEC members).)  The court addresses each group of recipients in

18   turn.

19

20   _____

     [3] Dr. Delashaw does not contest that the November 2016 Letter contains the type of
     "information" that is protected under the Act.  (*See* Cobbs 2d MSJ Resp. at 9-12; *see generally*

21   Delashaw Suppl. Br; *see also Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1324
     (11th Cir. 1994) (affirming grant of immunity under the HCQIA when a doctor who was

22   "generally considered to be a skilled surgeon" was removed in part due to perception he was
     "volcanic-tempered perfectionist" and "difficult man to work with")

1          *a.  Corporate Officers*

2          Dr. Cobbs contends that, because one can only communicate with a corporate

3    entity through its officers and directors, one can only "provid[e] information" to a "health

4    care entity" as contemplated by the Act by providing information to the individuals who

5    run that corporate entity.  (Cobbs Suppl. Br. at 3.)  While the court offers no opinion on

6    Dr. Cobbs's argument that this is only way to communicate with a health care entity

7    under the HCQIA, it agrees that information provided to corporate officers should be

8    viewed as information provided to a health care entity under the Act.  *See Bryan* 33 F.3d

9    at 1324, 1334 (11th Cir. 1994) (finding members of hospital board of directors to be

10   included in HCQIA's definition of health care entity); *Talwar v. Mercer Cty. Joint Twp.*

11   *Cmty. Hosp.*, 520 F. Supp. 2d 894, 899 (N.D. Ohio 2007) (same).  Dr. Delashaw does not

12   appear to contest that Mr. Armada, Ms. Altaras, Dr. Hochman, and Dr. Pascualy were

13   corporate officers with the ability to direct Swedish.  (*See* Cobbs 1st MSJ Resp. (Dkt.

14   # 140) at 14 (referring to Letter as being sent to "Swedish CEO Tony Armada,

15   Providence CEO Rod Hochman, and CEO of Swedish Seattle June Altaras"); 7/27/20

16   Pratt Decl., ¶ 25, Ex. 24 (submitting email to court that refers to Dr. Pascualy as Chief

17   Executive of Swedish Medical Group).)  A health care entity is defined to be a

18   professional review body under the Act, and these four individuals were corporate

19   officers with control over the health care entity of Swedish.  Thus, when Dr. Cobbs

20   shared the November 2016 Letter with these individuals, he was providing information to

21   a professional review body as defined by the HCQIA.

22   *//*

ORDER - 11

1                    b.  *MEC Members*

2           Dr. Delashaw does not dispute that MEC members are members of a professional

3    review body under the HCQIA, but instead contends that Dr. Cobbs has only established

4    that Dr. Hutchinson is a member of the MEC.  (*See* Delashaw Suppl. Br. at 4.)  In his

5    reply brief, Dr. Cobbs argued that the 16 other individuals who received the email were

6    members of Swedish's MEC.  (Cobbs 2d MSJ Reply at 8 ("***These were the MEC***

7    ***members.***") (emphasis and bolding in original); *but see id*. at 8 n.5 ("At least, these were

8    the MEC members as communicated to [Dr.] Cobbs by Swedish's CMO.") (citing

9    Pascualy Texts at 10-12).)

10          But Dr. Cobbs's own evidence belies his representation.   The text message

11   exchange makes it clear that Dr. Cobbs did not believe this list of names comprised the

12   MEC, but instead considered them to be members of the SMG Executive Council.  (*See*

13   Pascualy Texts at 10-12 (showing that Dr. Cobbs was awaiting the list of SMG executive

14   counsel names when Dr. Pascualy responded with the list of names and emails that are

15   cc'd on the Hutchinson Email)).  This is bolstered by the fact that Dr. Cobbs emailed Dr.

16   Gwinn Ryder 13 hours before he sent the Hutchinson Email that stated "[t]hese are

17   MEC," followed by a list of names, only two of which appear on the list Dr. Cobbs is

18   now contending to be the MEC:  Peggy Hutchinson and Michael Myint.  (*Compare*

19   11/30/20 Farmer Decl., Ex. 1 ("MEC Email"), *with* Hutchinson Email.)   Thus, the court

20   determines that Dr. Hutchinson and Michael Myint[4] were members of the MEC at the

21   _____

22      [4] While Dr. Delashaw argues that Dr. Hutchinson is the only MEC member listed on the
     Hutchinson Email, he does not appear to dispute the accuracy of the list of MEC names that he

1    time of the Hutchinson email and constitute members of a professional review body

2    under the HCQIA.  Dr. Cobbs has made no arguments and submitted no evidence

3    suggesting that the SMG executive council is a professional review body.  (*See generally*

4    Cobbs 2d MSJ; Cobbs 2d MSJ Reply; Cobbs Suppl. Br.)  Thus, viewing the evidence in

5    the light most favorable to Dr. Delashaw, Dr. Cobbs has failed to demonstrate that the

6    remaining 15 recipients of the email were members of a professional review body.  Dr.

7    Cobbs has also failed to demonstrate that HCQIA immunity applies to any other

8    recipients of the November 2016 Letter besides Mr. Armada, Ms. Alataras, Dr. Hochman,

9    Dr. Pascualy, Dr. Hutchinson, and Mr. Myint.[5]

10        3.   The Falsity Exception

11        The HCQIA does not provide immunity in all instances where information is

12    provided to members of a professional review body.  If the information is false and the

13    provider knew it was false, there is no immunity even if the recipient is a member of a

14    professional review body.  42 U.S.C. § 11111(a)(2).  The court has previously determined

15    that five out of seven categories of Dr. Cobbs's allegedly defamatory statements in the

16    November 2016 Letter were not made with a reckless disregard for truth.  (*See* 6/11/20

17    

18    submitted in support of his arguments.  (*See generally* Delashaw Suppl. Br.; MEC Email.)  Since
19    Michael Myint appears on both lists (*see* MEC Email), the court determines there is no genuine
     dispute of material fact as to Michael Myint's position on the MEC.

20        [5] Dr. Cobbs argues in his supplemental brief that, while HCQIA immunity does not apply
     to Dr. Cobbs's sending of the Letter to Dr. Newell, Dr. Delashaw cannot establish all the
21    elements of a defamation claim for that publication.  (Cobbs Suppl. Br. at 3 n.5.)  The court will
     not address this argument, raised in a footnote in supplemental briefing on the narrow issue of
22    HCQIA immunity.  (*Cf.* Cobbs Surreply (moving to strike arguments made in supplemental
     briefing because they did not squarely address HCQIA immunity).)

ORDER - 13

1    MSJ Order at 60-66.)  Since knowledge of falsity is a higher standard than reckless

2    disregard for truth, the court finds that Dr. Cobbs is immune from any damages stemming

3    from those five categories of statements made to the professional review body members.

4    The court determined that only Dr. Cobbs's statements regarding (1) SNI surgeons'

5    unanimous opposition to Dr. Delashaw and (2) Dr. Delashaw causing mass personnel

6    departures would survive summary judgment under a reckless disregard for truth

7    standard.  (*Id.*)  Viewing the evidence in the light most favorable to Dr. Delashaw, the

8    court determines there is a genuine dispute of material fact as to the falsity of these

9    categories of statements and Dr. Cobbs's knowledge of their falsity.  Thus, Dr. Cobbs

10   will not enjoy immunity from these two categories of statements if Dr. Delashaw is able

11   to demonstrate that they are false and that Dr. Cobbs knew they were false when he made

12   them.

13       In summary, the court finds that six recipients of the November 2016 Letter

14   constitute members of a professional review body under the HCQIA:  corporate officers

15   Mr. Armada, Ms. Alataras, Dr. Hochman, Dr. Pascualy; and MEC members Dr.

16   Hutchinson and Mr. Myint.  Thus, Dr. Cobbs can only be found liable for damages

17   resulting from the publication of the Letter to these individuals if the statements he made

18   to them were false and Dr. Cobbs knew they were false at the time of publication.  Only

19   two categories of allegedly defamatory statements—those regarding unanimous

20   opposition to Dr. Delashaw and Dr. Delashaw causing mass departures—are potentially

21   subject to this falsity exception to immunity.  To the extent immunity exists, it applies to

22   liability for damages caused by the protected statements in all claims against Dr. Cobbs,

1  not just the defamation claim.  *See* 42 U.S.C. § 11111(a)(2) (providing immunity for

2  liability "under any law of the United States or of any State").  However, the court finds

3  that there is a genuine dispute of material fact as to the HCQIA's applicability to the

4  remaining recipients of the November 2016 Letter, and no immunity for statements made

5  to these individuals exists at this time.  Therefore, the portion of Dr. Cobbs's second

6  motion for summary judgment that remains after the court's November 18, 2020 order is

7  granted in part and denied in part.

8                          **IV.    CONCLUSION**

9          For the foregoing reasons, the court GRANTS in part and DENIES in part both

10  Dr. Cobbs's motion to strike (Dkt. # 296) and the remaining portion of Dr. Cobbs's

11  second motion for summary judgment (Dkt. ## 185 (redacted); 188 (sealed)).

12          Dated this 7th day of January, 2021.

13

14

15                                      JAMES L. ROBART
                                        United States District Judge

16

17

18

19

20

21

22

ORDER - 15